## NATHANIEL S. MOWRY *vs.* CITY OF PROVIDENCE.

A dedication of land for the use of a limited portion of the public, when made for a purpose in which only that portion can have an interest, is a valid dedication, and a title to land so dedicated, whether by persons or corporations, as well as to land given to a charitable use, may be acquired by adverse possession.

*Semble*, that a partial dedication of land for a highway cannot be made, inasmuch as, a highway having once been laid out, all the general public have an interest in the use thereof.

The vote of the town of Providence, passed in 1708, dedicating a certain lot of land for a training ground and burial place, and for such other public uses as the town should see cause, *held* to be a dedication or gift, to a charitable use, for a limited portion of the public, and *held* that, consequently, title to it or to any part thereof could be acquired by adverse possession.

POTTER, J.   In this case a part of the lot claimed by appellant was taken for a street.   The city opposed the allowance of damages to him, on the ground that he had no title to the lot. No damages were allowed by the commissioners, and he appealed from their decision to the Court of Common Pleas, where the case was tried before the judge and a jury, in February, A. D. 1870, and the case now comes up here upon exceptions to the charge of the judge who presided at the trial.

The appellant claimed title to a part of his lot (fifty feet

square), under a grant from the town of Providence in 1708. The present boundaries of his lot included a greater space, and this he claimed as covered by deeds since 1840, and by possession before and since then. The part taken by the city for the new street was not a part of the original fifty feet lot.

The city claimed that the whole lot was part of a tract of land dedicated for a burying ground, training ground, &c., by the proprietors of Providence in 1708, bounded easterly on a street, and that having been dedicated to the public and accepted, no possessory title was of avail against the public.

The appellant claimed that the street on which the land dedicated was bounded by said proprietors was a road running west of his lot (and thus excluding it); and that if the jury should be of opinion that the road intended for the boundary was the road east of the appellant's lot (and which would include it), then there was no evidence that that part of the tract dedicated had ever been accepted, and that if accepted, it had been abandoned.

The old town of Providence, in 1708, included all the present county. The city claimed that no act of the town of Providence (after the separation into several towns) would amount to an abandonment of the use.

The counsel for the city requested the court to charge that the vote of 1708 was a dedication to the public of all the land described in it, and that if the land was so dedicated and accepted, it became dedicated to the public; and if the title once vested in the public, no person could acquire any title to it, or to any portion of it, against the public, by adverse possession for twenty years.

But the court charged that the dedication was intended for the use of the people of Providence, and not for the general public or the people of the whole state; and that the state had no interest in the use thereof, as in the case of highways; and that if it was dedicated and accepted for the purposes described in the vote, a title to it might be acquired by adverse possession.

This brings before us the point upon which most stress has been laid in the argument of the case.

The case seems to have been treated throughout by the counsel and the court as a case of dedication. The counsel for the city

now contend that if there be a dedication, it must be to the whole public, and that there cannot be a dedication to a portion of the public. It may be well to look back and consider the terms of the vote, and see if we can gather from that and the surrounding circumstances the intention of the parties; and then we can better decide how it should be treated. The vote appears in the records of a town meeting, June 10, 1708.

Although the vote was passed at a town meeting, it seems to have been a vote of proprietors, and the town is to have a right to use it for public purposes, not interfering with the purposes expressed.

Like most instruments of that date, it is perhaps not so definite as might be desired. But we think the intention plain. The proprietors had no interest or reason to induce them to lay out a burying ground or training ground for the people of the state at large; they had an obvious interest in laying out one for their own accommodation. The vote seems to intend that the town should have the control of it; and such seems to have been the usage; the town has controlled and fenced it. An act of the General Assembly of 1813 (Digest of 1822, p. 460) authorizes the town council to make by-laws regulating the public burying grounds (not specifying any); and the legislation relating to the division of towns seems to have proceeded upon this understanding.

· If the property or use was for the people of the town, then, upon the division of the town, it would remain to the old town. *Windham* v. *Portland*, 4 Mass. 384, 389; *Hampshire* v. *Franklin*, 16 Mass. 86.

When in 1730, Smithfield, Scituate, and Gloucester; in 1754, Cranston, and in 1759, Johnston, were incorporated out of the old town, nothing is said of the burying ground; the inhabitants of the new towns were not near enough for it to be a convenience to them. But when in June, 1765, the Assembly granted a petition to divide Providence again and to set off North Providence, by a line which left the burying ground in the new town, it was provided that the old town should have the full and free use and improvement of the said burying ground, " according as it now is stated and laid out by the town of Providence," &c., anything in this act to the contrary notwithstanding. 6 R. I. Colonial

Records, 436, 438. But in June, 1767 (8 Records, 528), this portion of the territory was reunited to the old town of Providence, and a provision made that the inhabitants of North Providence should have the free use of it for burying their dead, &c. If there was a dedication to the whole public, there was, of course, no need of any reservation in either of these acts.

It being then for the benefit of the people of the town, and not the general public, are we to apply to the case the principles of dedication ?

While the authorities seem to hold that a dedication may be partial either as to time or mode of using (3 Kent. Comm. s. p. 451, note; *Gowan* v. *Phila. Exchange Co.* 5 W. & S. 141; *King* v. *Northampton*, 2 M. & S. 262; *Marquis of Stafford* v. *Coynes*, 7 B. & C. 257), it is contended by the counsel for the city that there cannot be a dedication to a limited portion of the public, and they refer to the case of *Poole* v. *Huskinson*, 11 M. & W. 827. On examining the case we find that this was a highway case.

In the case of *Pearsall* v. *Port*, 20 Wend. 111, 126, Judge Cowen, in a very learned opinion, which was highly praised as reviewing the whole law, when the same case came before the Court of Errors (22 Wend. 425, 431, 478), where his decision was confirmed, says that the English cases have never pressed the doctrine of dedication beyond rights of way or travel, leaving other claims by portions of people to stand on the ground of customary or prescriptive rights, &c. If this view is correct, it explains the case of *Poole* v. *Huskinson*, as land offered for a highway would not become a highway unless the dedication was to the whole people. And there is no reason for extending this principle beyond the class of cases in which the decision was made.

But in this country the doctrine of dedication has been applied by the Supreme Court of the United States, and other courts, to public squares, to common lots, burying grounds, school lots, and lots for church purposes, &c., and pious and charitable uses generally, and in many cases where the use was either expressly, or from the necessity of the case, limited to a small portion of the public.

In *Beattie* v. *Kurtz et al.* 2 Pet. 566, a lot in Georgetown was

platted "for the Lutheran Church." The Lutherans were not incorporated, but used it for burial, church, and school purposes. Judge Story, who delivered the opinion, says : "We think it may be supported as a *dedication* of the lot to public and pious uses;" and further, that if Georgetown had been incorporated, it might have been considered as the grantee for their uses.

In *Cincinnati* v. *White*, 6 Pet. 431, a space along the river was platted as a common for the use and benefit of the town forever. The court apply to it the doctrine of dedication.

In *Hunter* v. *Sauztree*, 6 Hill, 407, the statement of the case given in the decision of the court shows that the patentee cleared a piece of land for the avowed purpose of a burying ground for the town. The court held that land may be dedicated to pious uses as well as for ways, and decided. the case on the general principles applicable to dedications.

In *Potter* v. *Chapin*, 6 Paige,.639, 649, a case of a school-house, the chancellor says that the evidence shows that the fund was dedicated to the inhabitants of the village for that purpose, as a donation or gift to a public charity; and throughout his opinion treats it as a dedication.

On the American authorities the present case may be sustained either as a dedication or as a gift to charitable uses.

In regard to the application of the statutes of limitations to charities, although there is some apparent confusion in the authorities, yet we think that the general principles to be deduced are sufficiently plain.

The English statutes of limitation only limited *actions*, and therefore were at first held not to apply to equity; but the principle has been settled as to private trusts, that, as to strangers, the legal and equitable estate may be defeated by twenty years' adverse possession ; Hill on Trustees, s. p. 267 ; *Cholmondeley* v. *Clinton*, 2 J. & W. 170, 174; *Elmendorf* v. *Taylor*, 10 Wheat. 152, 174, 178; *Long* v. *Carson*, 4 Rich. Eq. 60, 63, and cases cited ; and that even between the trustee and *cestui*, every equitable title (not being a case of a trustee whose possession is consistent with the title of the claimant) must be pursued within the twenty years, and that if the trustee denies the rights of the *cestui*, and claims absolute ownership, the *cestui* will be bound by length of time, as a tenant in common would in case of actual

ouster. *Kane* v. *Bloodgood*, 7 Johns. Ch. 90, 122, 123 ; *Hovenden* v. *Annesley*, 2 Sch. & Lef. 607, 628, 633, 636 ; *Rush* v. *Barr*, 1 Watts, 110 ; *Long* v. *Carson, supra.*

In Hill on Trustees, s. p. 170 and 266, it is broadly laid down that " trusts for charities are not affected by the statutes of limitation." On examination of the cases we find they are cases arising between the trustee and the trust, or affecting the construction of the trust, and they do not sustain this doctrine as concerns strangers to the trust. *Attorney General* v. *Mayor of Coventry*, 2 Vern. 397, 399 ; *Attorney General* v. *Mayor of Bristol*, 2 J. & W. 284, 321 ; *Attorney General* v. *Mayor of Exeter*, Cro. Jac. 448.

Mr. Sugden (Vendors 2, bottom paging 945) says that it has been decided under the 43 Eliz. ch. 4, § 6, that if the first purchaser of charity estates for valuable consideration has notice, all who claim under him are bound, whether they have notice or not, and that no length of time will protect them, and he cites *East Greenstead's Case*, Duke, 64, 175 ; *Attorney General* v. *Christ's Hospital*, 3 Myl. & K. 344.

On examining the case of Christ's Hospital, it seems one Foster had bought of the feoffees in trust, and given it by will to the defendants, and the court seem to proceed on the idea that the defendants were affected with notice of the trust. The deed then under which devisor held would of course give notice of the trust. And standing in the shoes of the first purchaser, length of time would not protect the defendants.

And we find Lord Chancellor Hardwicke holding that a charity is entitled to no favor against a purchaser for valuable consideration and without notice ; that equal justice was to be done to a charity and the estate of every private man ; but if any man for a valuable consideration and without notice of fraud obtained such an estate, there was no reason to take it away ; that to take an estate out of the hands of such a purchaser was just as honest as to rob in favor of a charity, &c. *Attorney General* v. *Gowen*, 2 Eq. Cas. Abr. 195, pl. 16. And the tendency of modern English decisions has been to extend the doctrine of adverse possessions to charities. The statute of limitations, 3 & 4 Wm. 4, c. 27, although in its terms not including charities, has been decided to embrace them. *College of St. Mary Magdalen* v. *Attorney General*, 6 H. L. Cas. 189.

And the ancient statute of this state, passed in February, 1711–12, for quieting possessions, goes far beyond any mere statute of limitations. As reënacted, it makes the possession not only a good plea in bar in defence, but a good title to a plaintiff. Its letter would include a case like the present, and we think the reason and spirit of it would extend to it. Certain persons are excepted. Can we extend these exceptions? We know of no similar statute in any other state. It is founded, as its old title implies, on the policy of quieting possessions, and does not proceed at all on any presumption of grant. We conclude that this was a dedication or gift to a charitable use, not for the whole public, but for a limited portion of the public, and that the doctrine of adverse possession will apply to it.

*Motion for new trial denied.*