## Gowen *against* The Philadelphia Exchange Company.

5ws141
136  306

5ws141
190  327

5 WS 141
208   ²193
24 SC 115

A dedication of property as a highway need not always be plenary; it may be partial where the circumstances distinctly show it was so intended.

A space left open in private property bordering on a highway for the accommodation, not of the public, but of the owner, is not thereby dedicated to public use, but may be resumed at pleasure.

ERROR to the District Court for the city and county of *Philadelphia*, where a nonsuit had been ordered against the plaintiff on the trial, in an action on the case brought by James Gowen against The Philadelphia Exchange Company, for obstructing the plaintiff's passage to and from his house into the highway, by erecting a wall against the door of the plaintiff's house.

The plaintiff was the owner of a three-story brick house and lot situated at the corner of Third and Dock streets, in the city of Philadelphia, 27 feet 6 inches in front on Third street, (its western boundary), and extending eastward 41 feet 3 inches on the southern boundary, and 46 feet eastward on Dock street, the northern boundary. It was on the eastern line of this lot, which was much narrower there than on the western line, that the door had been made and the wall erected against it. The ground adjacent to the door lay in front of the Exchange building, erected by the defendants in 1832. They had previously purchased all the block of ground and buildings bounding on Third, Dock and Walnut streets, except the plaintiff's. When the Exchange was erected, the front on Dock street was thrown back, and spaces of the old lot in front left, which were paved, and used by passengers for footways. One of these was between the plaintiff's house and the Exchange building, and led to the post-office and other offices situate in that building. The principal doors and windows of the post-office fronted Dock street and this pavement. After the erection of the Exchange, the plaintiff, in 1837, improved his eastern front at an expense of upwards of $2000, and placed a door there. In 1839, the defendants erected a wall which closed up the door, and rose up as high as the cornice of the plaintiff's house. It was placed on the line of an old wall, and stood half on the plaintiff's ground, and half on the defendants'. The plaintiff attempted to interrupt its erection, but, failing, brought this suit, contending that the paved spaces and passages were dedicated to public use as a highway, and that he had, therefore, a right of passage into and from his house along them.

Errors assigned:

1. The court erred in deciding that there was no evidence to go to the jury to sustain the plaintiff's case.

2. In ordering a nonsuit when there was evidence to go to the jury to sustain the plaintiff's case.

3. In deciding that, although the question of dedication or no dedication was one exclusively for the jury, there was no evidence whatever from which the fact of a dedication could be inferred.

4. In deciding that there was no evidence of a dedication.

*Dallas* and *Mallery*, for the plaintiff in error, referred to *Ham. N. P.* 192; 2 *Stra.* 1004; 1 *Camp.* 260; 11 *East* 376; 5 *Taunt.* 136; 3 *Bingh.* 147; 11 *Wend.* 499; 20 *Wend.* 111; 4 *N. Hamp.* 11; 2 *Vern.* 480; 3 *Vern.* 524; 6 *Peters'* S. C. R. 431, 498; 10 *Ib.* 262; 12 *Wend.* 172.

*Price* and *Meredith*, contra, cited 5 *Taunt.* 20, 126; 2 *Ashm.* 219; 2 *Whart.* 430; 3 *Watts* 219; 1 *Yeates* 167; 9 *Serg. & Rawle* 31.

The opinion of the Court was delivered by

GIBSON, C. J.—Though the anomalous doctrine of dedication to public use, or, more properly, of a grant to the public without the intervention of a trustee, began so late as 1732, it is of still more modern growth. The first trace of it is found in *Rex* v. *Hudson,* (2 *Stra.* 909), decided in that year; and the next in *Lade* v. *Shepherd,* (*id.* 1004), which was decided three years afterwards. It was then suffered to sleep till 1790, when it was awakened by *The Trustees of the Rugby Charity* v. *Merryweather,* (11 *East* 375, *note*), and for the last thirty years it has been, of all others, the subject most frequently agitated in regard to grants of highways, and most prolific in decisions, without having its principles very definitely settled: at least nothing very definite, or of general application, seems to have been extracted from the cases by those who have collected them. Perhaps we have not even yet materials enough to generalize. But it is agreed, without a dissent, that an owner may dedicate his ground to public use by any act which sufficiently evinces his will, without a previous adverse user, which is evidence, but not exclusively so, of a grant; and that he may restrict the enjoyment to particular seasons, seems also to be agreed. In *Rex* v. *The Inhabitants of Northampton,* (2 *Maule & Selw.* 264), Lord Ellenborough, conceding that the user might be thus limited, denied that there could be any other restriction of it; and in *Roberts* v. *Karr,* (1 *Camp.* 262, *note*), Mr. Justice HEATH thought there could not be a special dedication, though he admitted there might be a grant of a footway—a difference for which I am unable to find a reason. The point next came up in the Marquis of *Stafford* v. *Coney,* (7 B. & C. 275), before the puisne judges, BAYLEY and HOLROYD inclining to think there might be such a

dedication, and LITTLEDALE doubting. But *Woodyer* v. *Hadden,* (5 *Taunt.* 127), contains something very like a recognition of it by another name; and it therefore merits a particular examination. The plaintiff had laid out a street over his ground to the defendant's close; and it was held not to be *so* dedicated to public use that the defendant might turn it to account by using it as a thoroughfare from his close at the further end—a principle in unison with that of *Kirkham* v. *Sharp,* (1 *Whart.* 334), which was the case of a private alley. To lay out a street from one thoroughfare to another, would indicate, too clearly to be misunderstood, an intent to make the new street a thoroughfare also; but to lay out a street to a place which affords no outlet, though the new street were left to be lighted, watched and cleansed, as that was, at the public charge, would as clearly indicate the contrary. In *Woodyer* v. *Hadden,* what seems to have been a qualified dedication in substance, was called a license; and as a license is essentially revocable where a consideration has not been paid for it, the word is equally convenient, and perhaps more significant. The further inquiry material to the case before us is, whether there can be less than plenary dedication of a place which is not, as the street was in *Woodyer* v. *Hadden,* a cul de sac.

I see no objection to it where the circumstances distinctly show that only a partial dedication was intended. We have just seen that where a proprietor lays out a street with only one outlet, he decisively indicates that it is not to be a thoroughfare; and that he may evince an intent to license and not to dedicate, is borne out by *Baraclough* v. *Johnson,* (8 *Adolph & E.* 99), in which the owner of ground, who had allowed the inhabitants of a hamlet and an iron company to use a carriage-way over it during nineteen years for a nominal consideration, and had left the way open to all persons besides, was not precluded from resuming his original right, the public user being qualified by the private privilege. There are a thousand circumstances connected with a man's calling, which imply a license to enter his premises, subject to his regulation and control. The publican, the miller, the broker, the banker, the wharfinger, the artisan, or any professional man whatever, licenses the public to enter his place of business, in order to attract custom; but when the business is discontinued, the license is at an end. It is a license which is dependent on the use of the property to which it is annexed, and which cannot, without permission of the owner, be annexed to anything else; of which, the building in which we are sitting (the Masonic Hall) furnishes an apt illustration. Its apartments are let for balls, concerts, lectures, auctions, exhibitions, and other purposes which require that it be a place of public resort to make it profitable. In front of it is a quadrangular court of the breadth of the building, and of the depth of forty-five feet, with a semicircular carriage-way from the street to the principal entrance, and out again. The rest of the space is

[Gowen v. The Philadelphia Exchange Co.]

paved, and the whole is used by passengers as a part of the public footway. Yet no one imagines that the proprietors might not put a stop to the public user by putting up a building in front; or that the owner of one of the contiguous houses might draw to it a part of the benefit by making a door in his side-wall, and using the pavement as a footway to it. It may be said that such a court is a sort of cul de sac; but take another instance, very common in this city, of ground which is clearly not so. Many private dwellings in some of its principal streets were originally set back a few feet to leave room for a longer flight of steps to the first floor, proportionately raised, than the space usually allotted to the purpose would allow; but when the tide of commerce which set into those streets had driven out the more opulent families, and turned these dwellings into shops, the steps disappeared, the floor was let down to the business level, and the front was brought forward to the common line of steps and cellar-doors. In the mean time, the unoccupied space between had been paved and used as a part of the footway, which it so closely resembled as not to be distinguishable from it. Yet, though there had been an actual user and apparent dedication of it, no one ever dreamt that these were to be perpetual; for it was obvious that the space had been left open for the accommodation, not of the public, but of the owner. To doubt it, would injuriously affect the value of a vast amount of property, and prevent builders from consulting their present convenience. Might not this Exchange Company, on the same principle, pull down their building, cut up their ground into lots for stores, restore it to its former state, and thus revoke the public license to enter it? If they could do that, they can control the use of every part of it while the building is standing. The open ground belongs to the company, and adjoins the plaintiff's building on two of its sides. Besides the hall " where merchants most do congregate," the Exchange contains offices for brokers, notaries public, insurance companies, and most of those who move in the train of commerce; and in the basement at the side next the plaintiff, are a coffee-house and the post-office, to which the public have access over the ground in question; and the plaintiff attempted to annex a part of the use of it to his building by means of a doorway, which the company obstructed by means of a wall on their own premises. The question was, whether he and the public had the user by permission, or by indefeasible right; and we concur with the Judge who tried the cause, that there was no evidence of such a right to be left to the jury.

Judgment affirmed.