CHARLES A. WHITE *et al. vs.* ABIUD BRADLEY.

Kennebec, 1875.—December 28, 1876.

*Trial. Dedication.*

If, by reason of uncontroverted facts and evidence, it is clear that a plaintiff ought not to prevail, it is competent for the presiding judge so to rule, and to direct a nonsuit or a verdict for the defendant; and the correctness of such ruling may be tested by exceptions, or on report with proper stipulations; although part of the evidence may have been put in by the defendant; as where the only evidence offered by the defendant, consisted of city records and deeds, the genuineness of which were admitted, and the force and effect of which alone were in dispute. The question before the court then is whether, upon the whole testimony, a verdict for the plaintiff would be sustained.

To establish a right of way in the public by dedication, there must be unequivocal and satisfactory proof of the intention of the party, whose dedication is claimed, to grant the easement to the public, and of an acceptance by the public.

If the declarations proved, apply as well to a temporary way, to be used for the benefit of the owner of the estate or his tenants, as a way of access to a mill, store, or the like, as to a public street; and if there be acts which indicate the intention of the owner of the soil to reserve the control to himself, like the erection of a fence and gate, it cannot be said that the intention is established.

A permissive use by the public, for any length of time, of such a way of access laid out by the owner, does not prove a dedication or an acceptance. It is but a license, which may be revoked at the pleasure of the owner.

Nor is the right of the public complete without an acceptance. Mere use by individual members of the community will not prove it, nor will unauthorized repairs by a street commissioner, whether sufficient to raise a statute estoppel against the city or not.

Ways of necessity over adjoining land of a grantor, do not include ways of convenience to all parts of the lot granted.

So also, if one sell a building, the light necessary to the reasonable enjoyment of it, coming across the grantor's adjoining land, goes with it as an incident to the grant; but not that which would be a convenience simply, without being a necessity.

Whether a right to the continued enjoyment of light coming across the grantors' adjoining lot to existing windows in a building conveyed, can ever be implied, or can exist without an express grant or covenant, *quære.*

The deed of the trustees to these plaintiffs, expressly reserving the right to the grantors, and those claiming under them, to build upon the foundation wall, on that side of the plaintiffs' block, is conclusive against the existence of such right here.

ON EXCEPTIONS.

CASE, for obstructing a public way.

The substance of the testimony bearing upon the legal points raised, appears in the opinion.

*L. Clay*, for the plaintiffs.

*J. Baker & H. S. Webster*, for the defendant.

BARROWS, J.   The plaintiffs claim damages in a special action on the case against the defendant, because they say he has excavated the soil and deposited a large quantity of stone and large blocks of granite upon a lot of land lying westerly of a brick block owned by them on Water street in Gardiner, over which lot they claim a right of way.

The defendant justifies the acts complained of as owner of the lot, denying the plaintiffs' alleged right.

The plaintiffs assert that their claim is maintained by the testimony, upon the ground that it proves, 1st, that the lot claimed and used by the defendant as his own, is a public way, or street established by Robert H. Gardiner, the former owner by dedication ; or 2d, that they and others owning buildings on that side of Water street, there, have such right of way by necessity ; or 3d, that the plaintiffs have an easement in the lot claimed by defendant for light and air, by grant and necessity, which was injuriously affected by the defendant's acts.

After the plaintiffs had produced the testimony on which they relied to maintain their action, the defendant produced and put in, subject to objection, the records of the city of Gardiner, showing that the city government in 1866, laid out a street over this

lot, discontinued it in 1867, again laid it out in 1871, and a second time discontinued it in 1872.

The defendant put in his deed of the lot in question from the trustees of the estate of the late R. H. Gardiner ; and plaintiffs admitted their authority under Mr. Gardiner's will to convey. Hereupon the presiding judge ruled as matter of law, that the action could not be maintained ; and the case is reported to this court with the stipulation that if this ruling is not correct, or if the jury would be authorized to find for the plaintiffs upon the evidence produced, the case is to stand for trial ; otherwise a nonsuit is to be entered.

As the case is presented, a question sometimes raised as to the propriety of a peremptory ruling that the action cannot be maintained after evidence has been introduced in defense, seems to be waived.

The stipulation in the report seems designed to present rather the question whether a verdict for the plaintiff could be sustained upon the evidence reported, than any mere question as to the regularity of the proceeding, as a matter of practice. This is the question always presented where a nonsuit is ordered. *Fickett* v. *Swift,* 41 Maine, 65.

But were the case before us upon exceptions to the ordering of a nonsuit, we should not hesitate to declare that the later and better doctrine and practice are in favor of the course taken by the presiding judge viewed merely as a question of practice ; *i. e.,* if, upon the unquestioned facts and the uncontroverted testimony introduced, by which party soever it is offered, it is apparent that the plaintiffs' action cannot be maintained, it is competent for the presiding judge so to declare in the form of a ruling, the correctness of which may be tested upon exceptions, or upon report in the present form. *Cooper* v. *Waldron,* 50 Maine, 80. Cutting, J., in *Bragdon* v. *Appleton Ins. Co.,* 42 Maine, 259, p. 267, *et seq.* And this, although there may be some evidence to support the plaintiffs' claim, if it is not sufficient to justify the jury in finding the issue in his favor. *Beaulieu* v. *Portland Co.,* 48 Maine, 291.

Some questions are made as to the sufficiency of the declaration in the writ to warrant the introduction of proof of the existence

of a public way by dedication over the lot, or of special damage suffered by reason of the obstruction of a public way, questions which would merit a careful examination, if there were not insuperable objections to the maintenance of the action on the evidence here reported, however accurate and appropriate the declaration might have been.

Assuming that the declaration well sets forth the grounds upon which the plaintiffs claim to recover, let us see whether that claim is maintained by the testimony.

Touching the right in the public by dedication and acceptance, which is the ground chiefly relied on, the case shows that across the lot in question, and across other land of the same proprietor, adjacent thereto, there was for a series of years, during the lifetime of the late R. H. Gardiner, a way leading to a mill owned by him and occupied by his tenants. Prior to 1850–51, this road to the mill, in place of leaving Water street where it now does, traversed that part of Mr. Gardiner's land, which is now covered by what is called by the witnesses the post office building. On the lot in question was what is called the "hay barn," a row of wooden stores on Water street, covering the site of the plaintiffs' store, and this passage way. There is no pretense that at this time the use of the passage way was anything but permissive.

The plaintiffs' position is, that a dedication took place, when in 1850–51, the course of the road to the mill was changed by Mr. Gardiner, and two stores erected at a distance of about forty feet from each other, the space between, (which includes the lot since conveyed by the trustees of his estate to the defendant,) being apparently appropriated to furnish a way to the mill in lieu of the more devious track formerly leading to it from Water street. These stores, which seem to have been intended by Mr. Gardiner, as gifts to two of his sons, were finished with doors and windows opening upon this lot, through which there has been a passage way to the mill and to the rear of the stores.

Other store lots on the same side of Water street in that vicinity, previously conveyed by Mr. Gardiner, were bounded in the rear, upon a fifteen foot passage way, to which there was access from this mill road. Many witnesses are called to declarations of

the elder Gardiner, about this time in relation to this road.   It is worthy of note that nearly all of them speak of what he said of his expectations and of his intentions in certain contingencies.   Some of the expressions seem to import an opinion on his part, that there would always be a way of access to the mill there ; but there is very little, if anything, that could be construed as implying a present intention to give the public a right there, or to have the way used for anything except for the convenience of his own property and tenants.

One of the witnesses, an intelligent business man, at one time mayor of the city, at this time had bought the mill building, and hired the land and water privilege of Mr. Gardiner, under a lease. He testifies that when Mr. Gardiner told him of his intention to put up a building where the mill road then existed, he objected, and Mr. Gardiner said that he was going to open a new road farther down, which he thought would accommodate the witness, (his tenant,) equally well, and be of advantage to him by stopping parties from hauling logs out of the pond, so that the witness would get the use of the whole pond, to which it would seem that the old road gave access.   Witness asked Mr. Gardiner why he did not build the buildings together, and let the road remain where it was ; and Mr. Gardiner said he did not think that was a suitable place for a permanent road.   Now this obviously relates to a road to the mill which Mr. Gardiner, as proprietor of the site and privilege had a right, except so far as he was under obligation to his lessees, to open or shut, or do away with altogether at his pleasure.

A proprietor of real estate has an unquestionable right to devote any portion of his property for such a series of years as seems good to himself, to some use which shall invite trade and custom from the community at large, and to permit them to use some portion of his land as a way of access during such period of time, but that use confers no right upon the public, or the individuals accustomed to use such way.   It is permissive, merely, and for the benefit of the proprietor and his tenants ; and does not amount to a dedication.   The proprietor may when he pleases, devote his estate to some other use, or no use at all, and shut up the way in which he has permitted people to pass on his land, and nobody will have a

legal right to complain. A dedication to public use takes its effect from the intention of the person making it; and merely opening or widening a street, for the convenience, benefit or profit of the person doing it on his own land, will not constitute a dedication. *Gowen* v. *Philadelphia Exchange Co.*, 5 Watts & S. 141. *Morse* v. *Ranno*, 32 Vt. 600.

But a use which is simply permissive, however long continued, or the opening of a way as a private way, and subsequent use of it as such, whatever the length of such use by others, will not make it a public way, nor does it amount to proof of a dedication. *Mayberry* v. *Standish*, 56 Maine, 342. *Hall* v. *McLeod*, 2 Met. (Ky.) 98.

"A permissive use of a way by certain portions of the community, constitutes a license, and not a dedication, and is ordinarily something that may be revoked." Washburn on Easements, pp. 190, 191. Everything in such cases depends upon the intention of the party whose dedication is claimed, and upon the character of the permission given and the use allowed. *Stafford* v. *Coyney*, 7 Barn. & Cres. 257. *Barraclough* v. *Johnson*, 8 Ad. & E. 99.

And this intention must be unequivocally and satisfactorily proved. Washburn on Easements, p. 186, 3d ed.

It follows that declarations which apply as well to a way constructed by the proprietor for the profitable use of a portion of his estate, as to a way to be donated to the public, or which indicate rather an expectation of what will be done in the future, or upon some possible contingency, than a present absolute intention to make over the right to the public, have little or no value to prove a dedication. They are neither unequivocal nor satisfactory.

But it might perhaps be fairly argued that these declarations and acts of Mr. Gardiner, especially in relation to the mode of finishing the stores, and the evidence of user, to some extent if unexplained or uncontrolled by evidence to the contrary, and if an acceptance of the way by the public were proved, would be enough to entitle the plaintiffs to have the jury pass upon the question of his intention. But in the case before us there are other acts and facts proved, which effectually control and rebut what evidence of an intention to dedicate might be gathered from the language and acts of Mr. Gardiner.

Among these, the subsequent maintenance of a fence and gate for two or three years across this open space between the stores is especially noteworthy.

In Angell on Highways, § 153, where the learned writer is treating of what is sufficient evidence to rebut the presumption of dedication, the doctrine is laid down that when the intention to dedicate is negatived by circumstances, no presumption of dedication can be made, and the erection of a gate, bar or post is spoken of, as the most common method to effect this. "Nay, though the bar or gate have been knocked down, the fact of its having once been there will, at least for a considerable time, prevent the presumption of a dedication from arising." Smith's Leading Cases, vol. 2, p. 203, in note to *Dovaston* v. *Payne*, citing *Roberts* v. *Karr*, 1 Camp. 262.

"Of this *animus dedicandi*, the user by the public is evidence, and no more ; and a single act of interruption by the owner is of much more weight upon a question of intention, than many acts of enjoyment." Parke, B., in *Poole* v. *Huskinson*, 11 Mee. & W. 830.

Another act inconsistent with the idea that Mr. Gardiner had any intention to dedicate this way, or to recognize it as one upon the continued existence of which any person was at liberty to count, is the omission of all mention of it in the conveyance of the store, now owned by the plaintiffs, to his son.

But had there been sufficient evidence to warrant the jury in finding an intention to dedicate on the part of Mr. Gardiner, it would still have been necessary for the plaintiffs to show an acceptance by the city ; and evidence to that effect is not only wanting, but the contrary seems to be established.

The repairs by the street commissioner, which are relied on, seem to have been confined to repairs of a city drain or culvert, which had long existed there, and which occasionally broke out to the detriment and inconvenience of those who had occasion to use the passage way to the mill. If done with the express authority of the city government they could not well be construed as repairs upon the street. But there is no evidence that what was done, if it had amounted to repairs of the way there for the purpose of

making it passable as a street, was anything more than the unauthorized act of a street commissioner which could not avail to constitute an acceptance. *State* v. *Bradbury*, 40 Maine, 154. *Gilpatrick* v. *Biddeford*, 54 Maine, 93, 94. The use of the way being apparently permissive, such use, however long continued, would not constitute an acceptance by the city. *Mayberry* v. *Standish*, 56 Maine, 342, 351, 353. *Commonwealth* v. *Newbury*, 2 Pick. 51.

The fact that the fence was allowed to remain so long in the passage way, and was indeed never removed by the city authorities, is inconsistent with the idea of an acceptance: and more than all, the repeated action of the city government, in twice laying out a street there, and subsequently twice discontinuing it, cannot be regarded otherwise than as conclusive against the idea of an accepted dedication.

By a formal relinquishment made and entered of record by the city government, it cannot be doubted that a street, whether originally created by dedication and acceptance or by location, would cease to exist. The right of the public to the easement is a unit, and when surrendered by the body which has the legal authority and control over it, there is an end of it; and upon such relinquishment, all the rights of the owner which have been suspended during its existence revive and the land is his, discharged of the public easement. *Angell on Highways*, 2nd Ed. chap. III, § 168. chap. VII, § 326.

The defendant contends that plaintiffs are estopped by their acceptance of the deed dated June 15, 1866, from the trustees of R. H. Gardiner's estate from asserting any such right as he here sets up.

It is a well settled doctrine of the law that the grantee, in a valid and operative deed poll under which he derives and enjoys a title by its acceptance, becomes bound by the restrictions, limitations, reservations and exceptions contained in it, and it does not lie in his mouth to impeach it, or reject the burden it imposes; and the deed may charge other lands with a servitude besides those which are the subject of conveyance. *Winthrop* v. *Fairbanks*, 41 Maine, 307. *Vickerie* v. *Buswell*, 13 Maine, 289. *Newell* v. *Hill*, 2 Met. 180.

The measurements show that the plaintiffs' store including the foundation wall occupies a lot wider than that conveyed by R. H. Gardiner to his son Frederick, from whom the plaintiffs bought.

To make their title good, they received and put on record with Mr. F. Gardiner's deed, a deed from the trustees, conveying the right of said estate in the whole of the land which the brick wall of said store (next to the lot in question) covers, "with the right for the stone wall or foundation under said brick wall to remain as it now is; but this is in no way to include the land on which the said stone wall or foundation projects over or covers, or to prevent ourselves or our successors or assigns from building on to said stone foundation if we or they should wish to do so."

We do not think it necessary to determine whether the acceptance of this deed from the trustees of the Gardiner estate raises the estoppel against the plaintiffs, which the defendant claims; because, in view of all the testimony, the plaintiffs fail to establish the right they assert, and it is not necessary to resort to the estoppel. It is clear, however, that the plaintiffs, receiving such a deed as this when they took their title, are in no condition to assert any equitable estoppel against the defendant or his grantors, by reason of any words or acts of the elder Gardiner looking to a dedication, or by reason of the appearance of the building, or the manner in which it was finished. With this clause before them the plaintiffs must have known that the trustees contemplated building upon the foundation wall of the store on that side, and designed to guard against having their right to do so called in question by future purchasers or occupants, while they were willing to grant the right of permanent support for the structure which the plaintiffs were purchasing.

Angell in his treatise on the law of highways, chap. III, § 156 pp. 172, 174, criticises quite forcibly the application of the doctrine of estoppels *in pais* to cases of dedication in certain American decisions, among which is *Cole* v. *Sprowl*, 35 Maine, 161.

It is certain that, carelessly applied in cases where all the elements necessary to create a binding estoppel do not exist, it is liable to be the means of much injustice, and to burden the ownership of real estate with consequences never anticipated by the pro-

prietors as likely to arise from the uses to which they have put portions of their property from time to time as temporary convenience might dictate.

But as before remarked, there is no room to argue that the plaintiffs' case can derive aid from any such estoppel. The correspondence between them and the trustees, shows conclusively, that they bought with the knowledge that no permanent appropriation of that land for a way, was made; and arranged with the agent of the trustees to have notice whenever the lot now belonging to defendant should be offered for sale, and received such notice.

We have thus examined, at much length, the principal ground upon which the plaintiffs assert a right in this lot of the defendant; and are of opinion that their claim is not maintained.

There is little force in the attempt to assert a right of way by necessity over this lot to this store situated on one of the principal streets in Gardiner. Mere convenience of access to all parts of a lot purchased will confer no such right in the adjoining land of the grantor. The defendant's lot is bounded in the rear by the same fifteen foot passage way which runs in the rear of the plaintiffs' store. There is no testimony tending to show that he has in any manner obstructed this passage way or prevented its legitimate use. It would be idle to assert as matter of necessity, a right to a forty foot opening to a fifteen foot passage way, even if the plaintiffs could establish their right to have a way from that passage way into Water street in the immediate vicinity of their store, a right which is not apparent from any thing in the conveyances introduced. The claim of an easement in the defendant's lot for light and air, has no better foundation.

That no such right arises by necessity, is apparent from the fact that plaintiffs' store faces upon a principal street, and has all the light which other stores in the same row can have, except those upon the corners. It is a singular commentary upon such a claim that the testimony shows that the plaintiffs, after going into the occupation of the premises for their own convenience, boarded or bricked up all but one of the windows opening upon this lot.

There is no occasion to question the doctrine laid down in Washburn on Easements, chap. IV, § 6, p. 26, that "if one sell a house,

the light necessary for the reasonable enjoyment whereof is derived from and across adjoining land, then belonging to the same owner, the easement of light and air over such vacant lot, would pass as incident to the dwelling house, because necessary to the enjoyment thereof." Such is not this case; which falls rather under the remaining clause of the sentence, from which the above quotation is taken, "but the law would not carry the doctrine to the securing of such easement as a mere convenience to the granted premises."

That mere length of enjoyment will not create this easement, was held in this State in *Pierre* v. *Fernald*, 26 Maine, 436, a leading case, the doctrine and reasoning of which have often been quoted approvingly as showing wherein and why the common law doctrine as held in this country, differs from that of England.

In Massachusetts the law may be regarded as settled that no easement of light or air exists over adjoining lands, except by express grant or covenant. *Brooks* v. *Reynolds*, 106 Mass. 31. *Royce* v. *Guggenheim*, id. 205.

Nor is this because of existing statute provisions alone. *Rogers* v. *Sawin*, 10 Gray, 376, 378. *Collier* v. *Pierce*, 7 Gray, 18.

But with the deed of the trustees of the Gardiner estate to these plaintiffs before us, we do not feel called upon to decide whether under any circumstances, an easement of light over an adjoining lot beyond what is purely necessary is ever implied as against the grantor, by the conveyance of a building standing upon the line so as to prevent the grantor or his subsequent grantees from interfering with the enjoyment of windows actually existing in the building conveyed by him.

Upon this question we remark in passing, that the decisions in Iowa and Ohio are not altogether in harmony; for while in Ohio the existence of such a right by implication is denied altogether, in Iowa the court say that they will not hold that it can never exist, though as a general rule it will not be implied so as to prevent the owner of the adjoining land from building thereon.

Here, not only is there nothing in the description of the plaintiffs lot in any of the deeds, which could carry with it the idea of such a right, or of the existence of any passage way or open space on that side; but the trustees in their conveyance of the strip of

land covered by the wall of plaintiffs block, expressly reserve the right to build on the foundation there, and thus exclude the possibility of such an implication.

The ruling of the presiding judge was correct. A verdict for the plaintiffs could not be sustained on the testimony reported.

*Plaintiffs nonsuit.*

APPLETON, C. J., WALTON and DICKERSON, JJ., concurred.

LIBBEY, J., having been of counsel, did not sit.