# Griffin's Appeal.

1. Where there is no dedication of land to public use by the owner, use of the same by the public jointly with the owner and by his sufferance, does not establish a right in the public by dedication, no matter how long such joint use is continued. Dedication is a matter of intention, and when clearly proved, is as complete in one day as in twenty-one years.

2. In absence of opposing proof, long continued use by the public is evidence of an intent to dedicate, but it is not conclusive, and always yields to satisfactory contrary proof.

3. Where the owner of land, bordering on a public highway, sets his fence back from the highway for his own convenience, and uses the intervening space until his death, for private purposes, a bill for an injunction will not lie, by the municipal authorities, to restrain a subse-

quent owner of said property, fifteen years after the death of the former owner, from setting back the fence, and again including said intervening space within the same.

4. The testimony in this case held to warrant a finding of the above state of facts.

5. *Semble.* That in cases where the court below reverses a Master upon findings of fact, without reviewing the testimony, an opinion should be filed pointing out the errors of the Master in his treatment of the facts.

February 26th, 1885.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas of *Lackawanna county:* In Equity: Of January Term 1885, No. 287.

Bill in equity, filed August 2d, 1875, between the city of Scranton, plaintiff, and D. W. Griffin, defendant, praying for an injunction to restrain the defendant from erecting a fence along the side of Main street, claimed by plaintiff to extend into, and be an obstruction to said street.

The bill set out, that in the city of Scranton there was a street known as Main street which had been accepted and used as a public street or road for thirty years or more; that the fence on the easterly side had remained unchanged for a period of thirty years; that the defendant had begun the erection of a fence in front of his premises and along the line of said Main street, 15 feet in front of the former fence line, toward the centre of Main street, occupying the sidewalk and reducing the width of the street; by reason of which the street was made unsafe for travel, and the city rendered liable to suits for damages.

The defendant's answer denied that the fence at the point in dispute had been fixed and permanent as alleged in the bill; and averred that it had been frequently changed; that Judson Clark, a former owner, had thrown back the fence at said point which was in front of his dwelling, so as to make an unoccupied space there between the street and his house, where he could tie horses and leave wagons when not in use; that the space so thrown open had not been dedicated to public use, and was the space now fenced in by the present owner of the Clark homestead, and finally that the defendant was not obstructing the street, but was building his fence upon the line established by the city authorities of Scranton.

The cause was referred to M. J. Wilson, Esquire, as Master, who filed the following report: "In 1855 or 1856 Judson Clark became the owner of a farm, now in whole or in part within the limits of the city of Scranton. The Providence and Carbondale Plank Road passed over or across this farm. Soon after Mr. Clark purchased, he moved the road fence back

on the side next his house, leaving an open space between the fence and the road bed, some twenty-five or thirty feet in width. This was done for the more convenient use of his property, to provide standing room for wagons, etc. This space was so used by Mr. Clark up to the time of his death in 1860. Mr. Clark left a will giving to his widow the dwelling house on the east side of the Providence and Carbondale Turnpike, with certain land on which it stood, bounded on the west by said road, and this is the property now owned by D. W. Griffin, the defendant. The defendant now seeks to take in all or a part of the land thrown out by Clark when he moved the road fence back, and by this bill the plaintiff seeks to restrain him from so doing. That part of the road is now in the First ward, and is known as Main street. It was graded and ditched, and sidewalks laid out in 1875 and 1876 by city officials and at city expense. I cannot find that Clark dedicated this strip of land to public use, or that he intended to do so; but from his acts I infer a contrary intent. Neither can I find that the fence erected or sought to be erected by the defendant is or will be an obstruction of this street. I am of opinion the defendant has the right to build his fence on the line where it used to be, where it was when Mr. Clark bought the farm, and I cannot say but that the fence being built is on or within that line. I would, therefore, advise that the injunction be dissolved and the bill be dismissed at the plaintiff's cost."

The case was subsequently referred again to the Master to take further testimony. Numerous witnesses for the plaintiff testified that they had been familiar with the Clark property for thirty or forty years, and that they had never seen a fence in front of it "so far out in the street" as the one started by the defendant; that there had been "no fence so far out for forty years" to their recollection; that said fence was in the road bed; that it was an obstruction to the road; that it "stands in what was the road, and what has been the road for thirty years, so far as my recollection goes." . . . . . Witnesses for the defendant testified that Clark moved the fence back when he bought the property, and used the space thus made by the new fence for wagons, as previously reported by the Master. [The testimony of defendant's witnesses is set out at length in the opinion of the Supreme Court.]

The Master filed a second report by which he refused to change the former one, and recommended that the plaintiff's bill be dismissed. The plaintiff filed, *inter alia*, the following exception:—

"Fourth. Because the Master erred in deciding that a twenty-one year user on the part of the public, was not an absolute dedication to public use, rendering the erection of

any obstruction thereto, ground for the granting of an injunction."

The court, HANDLEY, P. J., filed the following opinion: "We filed an opinion on December 29th, 1875, continuing the injunction granted in this case. The Master now reports adversely to the plaintiff, whereupon she filed exceptions.

"We have made a careful examination of the evidence, the report and exceptions. We cannot agree with the Master, and hence sustain the plaintiff's fourth exception, and order and direct the injunction heretofore granted to be made perpetual against the defendant."

The defendant thereupon took this appeal, assigning for error, the decree of the court making the injunction perpetual, and imposing the costs on the defendant.

*H. M. Hannah*, for appellant.—The Master finds that there was no dedication at all of the strip of land between the foot path used by the public along the defendant's fence and the real road bed, which was some twenty-five or thirty feet from this fence. He finds as a matter of fact that "Judson Clark moved his fences back on the side next his house, leaving an open space between the fence and the road bed some twenty-five or thirty feet in width. This was done for the more convenient use of his property, to provide standing room for his wagons, etc. This space was so used by Mr. Clark up to the time of his death in 1860."

There was no evidence offered by the plaintiff which directly contradicted this. The Master then only finds as a fact what the witnesses had positively sworn to. What he found upon this point was not only supported by the weight of the testimony, but was supported by all the direct testimony in the case relating to this particular question. The weight to be given to a Master's finding of facts is fully explained in Sproull's App., 71 Pa. St., 137; Hindman's App., 85 Id., 467; Burton's App., 93 Id., 214; Winton *v.* Mott, 4 Luz. Leg. Reg., 71.

*I. H. Burns* and *E. B. Sturges*, for appellee.—In view of the testimony before the Master, the burden of proof was on the defendant below to overthrow the presumption of dedication. But the Master put the whole burden of showing a dedication on the plaintiff, in which plaintiff undoubtedly succeeded. "It is not necessary to a dedication, that there shall have been twenty-one years of adverse enjoyment:" Schenley *v.* Commonwealth, 36 Pa. St., 59.

Mr. Justice GREEN delivered the opinion of the court, May 4th, 1885.

In this case no evidence was given of the record of the road or street in question, fixing its legal limits, and thus enabling the determination of the precise question whether the defendant had established an obstruction within those limits. Some attempt was made to show a given width of the street at the point of the alleged obstruction, but the evidence offered in support of the theory of a definite width was so imperfect, so contradictory and so much in hostility with equally credible and more precise testimony on the other side, that it cannot be accepted as satisfactory. The case was in fact tried and adjudged in the court below, upon the theory of a dedication by a former owner, to public use, of that portion of the street upon which the appellant erected the fence complained of. The Master found that there was no dedication to public use, by Clark the former owner, but that he had merely set back his front fence, leaving some twenty-five or thirty feet of open space between the new fence and the road-bed, and that he had done this for his own convenience to provide standing room for wagons, etc. He further found that Clark used this open space for these purposes until the time of his death in 1860, and that therefore the appellant, the present owner of Clark's title, had a right to restore the fence to its former position. If the Master's finding is sustained by the testimony, of course the theory of dedication is at an end, and his conclusion recommending a dismissal of the bill must be sustained. The court below reversed the Master's finding upon one exception without any opinion, without any review of the testimony and without showing that the Master's finding of fact was incorrect. It is to be regretted in this and in all cases where the court reverses the Master upon findings of fact without reviewing the testimony, that no opinion is filed pointing out the errors of the Master in his treatment of the facts. Such an opinion, besides being required by a just regard to the rights of the parties and to the character and dignity of the proceeding, greatly simplifies the work to be performed by this Court, by directing our attention to the very points of difference between the Master and the court in the conclusions respectively reached by them. In this case the court below simply said they could not agree with the Master and therefore sustained the fourth exception. That exception, however, only alleged that the Master erred in deciding that a twenty-one years' user on the part of the public, was not an absolute dedication to public use. But the Master made no such decision. What he found was that there was no dedication of the ground in question to public use, and on that question the court says nothing. If there was no dedication to public use, the fact of such use jointly with the owner and by his mere sufferance,

would not establish a right by dedication no matter how long it was continued.    Dedication is a matter of intention, and when clearly proved is as complete in one day as in twenty-one years.    Where there is no opposing proof, long continued use by the public is evidence of an intent to dedicate, but it is by no means conclusive and always yields to contrary proof of a satisfactory character.    In Goddard's Law of Easements, page 182, it is said, " The intention to dedicate, however, ought to be *clearly manifest* in order to deprive a landowner of his own property "—citing numerous authorities.    In the case of Gowen *v.* Phila. Exchange Co., 5 W. & S., 141, we held that a space left open in private property bordering on a highway, for the accommodation, not of the public, but of the owner, is not thereby dedicated to public use but may be resumed at pleasure.    In Neill *v.* Gallagher, 31 Leg. Int., 388, we held that the mere setting back of a building from the line of the street is not a dedication of the intervening space to public use.    These are judicial expressions upon the legal effect of the principal fact relied upon by the plaintiff in the present case, and they show its entire insufficiency, standing by itself, as proof of an act of dedication.    Was there then testimony in the case upon which the Master was authorized to find that when Clark, the former owner, set back the fence he did so for his own convenience and not for the purpose of dedicating the ground left open on the front part of his lot to public use?

Myron J. Clark, a witness for the plaintiff, testified—" In 1855 or 1856 there was a board fence further out than the picket fence which father built.    Father took this fence down soon after he bought and built a picket fence.    I think this picket fence is still there. . . . . . The barn was built inside of the old barn fence, and the board fence was turned in so as to get into the barn from the road.    The picket fence was built further back so the turn or jog was less."    N. D. Riker, another witness for the plaintiff, says—" I think the fence has been moved back ten to twenty feet: remember the old fence in front of Clark's and remember when it was taken away and the picket fence put up, but cannot tell when it was: my idea was the present picket fence is about where the old fence was."

Godfrey von Storch, a witness for the defendant, who had lived in the vicinity for fifty-seven years, and was acquainted with the place from his earliest recollection, says: " There was an old house there called the Peter Bond house, after the name of the miller who had lived there.    There are still marks of the house on the ground.    There is still to be seen the cellar walls; the inside face of the wall is, I think, three feet and seven inches out in the street from the picket fence; from

appearance, the wall is eighteen inches thick; this wall is in the centre of the path or sidewalk as now used; there is no sidewalk, just a path. This wall, inside face, is eight feet from the new fence; there was a fence in front of this house a good many years ago, but there has not been for twenty-five or thirty years; as near as I can recollect, it was about six feet in front; when we built the barn, in 1853, there was no fence in front of the house; it had been turned so as to nail on to the house; the fence has been moved back twice within my recollection; I think in 1855, when Clark moved down, he took down post and board fence in front and put up a picket fence; Clark used the old house to store bran and stuff we did not have room for at the mill; the stuff was moved up with teams, wagons; the barn we built was some twenty feet from the house beyond the old house; it was set back into the field; afterwards he took the fence away and throwed it into the road; the next year or two he took the old house away and built a carriage house on the barn; he left room for wagons to stand outside on the road in front of the barn; he said he had land enough of his own, and moved his fence back so as to leave room for his wagons to stand in front of the barn without being in the road; this space in front was used for wagons so long as I staid there, and it was so used for years afterwards as I passed there." If the testimony of this witness was believed by the Master, it entirely destroys the theory of a dedication to public use of the ground in front of the picket fence, and fully proves that the old fence was set back entirely for the convenience of Clark, the owner. There is not only no reason to disbelieve it that we are aware of, but every reason to give it credence. In conjunction with the testimony of Clark and Riker above referred to, it clearly proves that there was an old fence standing out beyond the picket fence and in front of the buildings, which was set back to the picket fence, and in this respect disposes of much of the testimony of the witnesses for the plaintiff who never knew of the old fence. It gives the location of the old fence from marks on the ground as well as from memory, and, above all, it exhibits a clear and satisfactory reason for setting back the old fence to subserve the convenience of the owner, and proves the long use of the ground thus thrown open for that very purpose. No amount of negative evidence is any answer to such testimony. The witness is precise in his details, appears to be entirely disinterested, and nothing is alleged against his truthfulness. Moreover, his testimony is consistent with the natural probabilities of the case, and we think the Master was not only justified but required to accept and act upon it. But there was much corroborative evidence. Thus Aaron Mc-

[Insurance Co. *v.* Cusick.]

Donnell says: "I remember when Clark moved there, but do not remember the year; the old fence in front of Griffin's stood out considerable nearer the road than the fence now there does; do not remember when the picket fence was built nor by whom." Uriah McDonnell, who lived close by, and knew the place about forty-five years, said: "I remember the Bond house; sparked one of the girls in it; there are marks on the ground where the house stood; the foundation is there; from the inside of the wall to the picket fence is about four feet; I judge, from the best of my recollection, there was a fence in front of the old Bond house, may have been six or seven feet in front of it." . . . . . "Clark used the space in front to keep his wagons at night; all the space in front of Griffin's has not been used as a roadway; Clark used to keep his wagons in there; he used ten to eleven feet at one end and eighteen to twenty feet at the other for this purpose; he began to use this some twenty-one years ago—as much as that; I can't give exact dates; this was when the fence was moved back; Mr. Clark used this up to the time of his death." . . . . "Clark had no shed in the open space; he simply unhitched and left his wagons there; I think he had three wagons; winters and summers he used this space." There was other testimony which it is not necessary to review, as it does not illustrate the material point of contention. Had not the Master' conclusion been overruled we should not have felt called upon to make such extended quotations from the evidence. To us it is manifest that he was fully justified in his findings, and we therefore sustain them.

　　　　The decree of the court below is reversed, and
　　　　the bill is dismissed at the cost of the plain-
　　　　tiff, including the costs of this appeal.