## Romberger v. Commonwealth

*Bailey, Pearson, Miller & Bolton,* for plaintiffs.

*Donald Blanken,* for defendant.

KREIDER, J., September 12, 1960.— . . .

### Question Involved

Where an owner, at his own expense, lays out grass plots and sidewalks on his land adjacent to a public

road and the sidewalks are used by the owner and the public jointly for more than 21 years, may the Commonwealth appropriate the grass plots and the sidewalks and make them a part of the roadway to be used for vehicular traffic, without compensating the owner of the land?

## *Discussion*

The Commonwealth's contention is that in improving and widening West Main Street it did not "take" any private property owned by plaintiffs. This contention is based on the proposition that what was taken was curb and sidewalk which was property already dedicated by implication to the public and that the Commonwealth merely changed the use of a portion of the sidewalk and curb.

Plaintiffs' position is: (1) That they did not dedicate the area in question to public use; (2) that the Commonwealth acquired no right to use their property either by dedication or prescription; (3) that, at most, the public acquired no more than a limited, permissive use restricted to foot traffic on the sidewalks, jointly with the plaintiffs.

"A dedication is the devotion of land to a public use, by an unequivocal act of the owner of the fee, manifesting the intention that it shall be accepted and used presently or in the future for such public purpose": 26 C. J. S., Dedication, §1, p. 398.

A leading modern case on dedication is Vendetti Appeal (sometimes cited as Township of Millcreek v. A Piece of Land, etc.), 181 Pa. Superior Ct. 214 (1956). There, Judge Ervin in a comprehensive opinion set forth the applicable legal principles as follows, pages 220, 221-22:

"Dedication has a partial analogy to a contract and requires a consideration of the elements of offer and acceptance. The offer of dedication may be made in a

number of ways. It may be made by the express declaration of the party or by acts, deed, or plat. 16 Am. Jur. Dedication, §§4, 19. Dedication rests upon the intention of the owners, and the circumstances must indicate an abandonment of the property to the community. *Peterson v. Marianna Borough*, 310 Pa. 524, 165 A. 838; *Versailles Twp. Authority v. McKeesport*, 171 Pa. Superior Ct. 377, 90 A. 2d 581; *Sedwick v. Blaney*, 177 Pa. Superior Ct. 423, 110 A. 2d 902. No particular formality is requisite to constitute a dedication upon the part of the owner. Any act which clearly indicates an intention to dedicate is sufficient. *Waters v. Philadelphia*, 208 Pa. 189, 57 A. 523. . . .

". . . The acceptance of a dedication, or what may be more accurately called an offer of dedication, has many of the incidents of acceptance in the law of contracts. It is the act of acceptance which makes the dedication complete. 16 Am. Jur., Dedication, §30. As stated by Mr. Justice Jones in *Dormont Borough Appeal*, 371 Pa. 84, 89 A. 2d 351: 'Dedication is the joint effect of the offer of the owner to dedicate land and acceptance of such land by the public. Two parties are necessary, the owner on one side and the public on the other; there can be no dedication without the participation of both; Los Angeles v. Kysor, 125 Cal. 463.' Evidence to establish an acceptance of a dedication must be clear and convincing. *Kniss v. Borough of Duquesne*, 255 Pa. 417, 100 A. 132; *Milford Borough v. Burnett*, 288 Pa. 434, 136 A. 669."

A fundamental fact to be kept in mind in the instant case is that there is no evidence of any express dedication of the sidewalks or grass plots in question. Moreover, there is no evidence that the Borough of Elizabethville, which was incorporated March 30, 1893, at any time adopted a valid ordinance condemning the area in question or providing for compensation therefor. As stated, plaintiffs' deeds run to the curb

line. To establish dedication, the Commonwealth must show facts which as a matter of law *clearly* manifest the intention of the owners to dedicate the land in front of their buildings. Here, all that the Commonwealth has shown is that plaintiffs or their predecessors built their houses back from the street; that in the space so left open they planted trees and, at some places, grass plots along the curb line and that they also paved the sidewalks for their own use and for pedestrians generally, and that these sidewalks, which in some cases were inside the grass plots and in others extended from the building line to the curb, were used by the public for more than 21 years.

Plaintiffs maintained these sidewalks and curbs at their own expense and changed them from time to time to suit their convenience. Thus, when plaintiffs' commercial garage was erected, the space in front of it was utilized for garage purposes just as fully as the building itself. A marquee and an advertising sign were hung from the garage over the sidewalk out to the curb line; *fuel and oil pumps* were erected *at the curb* so that customers could be conveniently served. Gasoline tanks were installed underneath this area, and the entire open space was cemented. Plaintiffs' photographs show that the area was an integral part of the garage and the stipulation of facts sets forth that plaintiffs retained physical possession of these open spaces and made use of them in connection with their properties.

The only evidence from which it might be argued that there was a dedication is that for many years the public has been using the paved walks in front of plaintiffs' properties. In an early Pennsylvania case which is frequently cited, our Supreme Court, however, held that such acquiescence by an owner did not amount to a dedication of the walks to public use: Gowen v. Philadelphia Exchange Co., 5 W. & S. 141

(1843). That was an action for obstructing plaintiff's right of passage over an open space in front of his house. Plaintiff's theory was that defendant had dedicated that space for public use. The Supreme Court, speaking through Mr. Chief Justice Gibson, held that this space was left open *for the convenience of the owner* of the building and that there was no intention to make it a thoroughfare. The rule laid down in the Gowen case 117 years ago has been followed to the present time.

In Duncan v. Hanbest, 2 Brewster 362 (1857), an equity action came before the Supreme Court to restrain defendant from rebuilding his house out to the original building line of the street. Prior to 1803, defendant's building was built back 30 inches and plaintiff's and all the other buildings in the block were built back to this extent. Part of the open space thus left for defendant's house was used for a cellar door and doorway. In refusing to enjoin defendant, the Supreme Court stated, p. 363:

"A considerable part of the space in front of defendant's building is now, and for a long time heretofore has been, used for a cellar door *and doorway. This use disproves the intent to dedicate to the public use, and indicates sufficiently the claim of ownership up to the line of the street.*" (Italics supplied.)

And, at page 364:

"1st. That an owner of property who voluntarily leaves a space in front of his building open for a footway, occupied in part by his cellar door, for a large number of years, may nevertheless extend his building upon his own ground to the line of the street whenever he chooses to do so."

In Griffin's Appeal, 109 Pa. 150 (1885), a bill in equity was filed by the City of Scranton to restrain defendant from erecting a fence within an area

claimed to be the bed of Main Street. The evidence showed that about 30 years before the case arose, defendant's predecessor in title had placed the fence about 25 feet back from the original street line, so that the space could be used to tie his horses and leave his wagons when not in use. Subsequently, this area was graded and ditched and sidewalks laid by city officials and at city expense as part of the street. When defendant tried to erect a new fence at the original property line, the city attempted to enjoin him on the theory that the open space had been dedicated as part of the street. The lower court overruled the master's report which found in favor of defendant and granted the injunction. In reversing this decree and dismissing the city's bill, the Supreme Court said, pages 154-55) :

". . . the Master found that there was no dedication to public use, by Clark the former owner, but that he had merely set back his front fence, leaving some twenty-five or thirty feet of open space between the new fence and the road-bed, and that he had done this for his own convenience to provide standing room for wagons, etc. He further found that Clark used this open space for these purposes until the time of his death in 1860, and that therefore the appellant, the present owner of Clark's title, had a right to restore the fence to its former position. If the Master's finding is sustained by the testimony, of course the theory of dedication is at an end, and his conclusion recommending a dismissal of the bill must be sustained. . . Dedication is a matter of intention, and when clearly proved is as complete in one day as in twenty-one years. Where there is no opposing proof, long continued use by the public is evidence of an intent to dedicate, but it is by no means conclusive and always yields to contrary proof of a satisfactory character. In Goddard's Law of Easements, page 182, it is said, "The intention to dedicate, however, ought to be *clearly*

*manifest* in order to deprive a landowner of his own property'—citing numerous authorities. . ."

The court concluded that since there was credible evidence that the owner set back the fence for his own convenience, there was no dedication of the land in dispute.

Another leading case on the subject of dedication is Weiss v. Borough of South Bethlehem, 136 Pa. 294 (1890). This was an appeal from an award of viewers. Plaintiff owned a factory which was bounded on the north by a railroad right of way. Along the railroad in front of plaintiff's building and all the other buildings in the block, there was an open space 30 feet wide which for more than 21 years had been used by the public to travel from one street to another. Plaintiff also used the space in front of his factory for loading and had a siding crossing it to the railroad. In 1887, the city opened an alley across the north 20 feet of this strip, and plaintiff asked for the appointment of viewers to award him damages The trial court instructed the jury, in effect, that if there was no dedication, plaintiff was entitled to damages. After the jury returned a verdict for plaintiff, the borough moved for a new trial and appealed from its refusal. In affirming the judgment entered on the verdict, the Supreme Court said, pages 304-05:

". . . That use of land for a street which constitutes a dedication, was carefully explained to the jury. They were told that it was a question of intention; if the intention to dedicate existed, it would become effective without reference to the length of time the way might be used, but if there was no intention to dedicate, the user would not take effect as a dedication, no matter how long it was continued. The jury was also instructed, that *a mere permissive use by the public of a piece of ground left open by the owner in front of his property, and used by him in his own busi-*

*ness and for his own convenience, was not a dedication
to public use,* and conferred no right upon the public
as against the owner. And the jury was further in-
structed, that the question whether or not there was
a dedication, in this case, depended upon the facts in
evidence as to the opening of the land, the *character
of its use by the public, the character of the property,*
the nature of the land and its surroundings, and all
the other circumstances in the case, and if they found
that there was an intention to dedicate on the part
of the owner, they would be warranted in finding that
there was an actual dedication, and in that event their
verdict should be in favor of the defendant. We fail
to find any error in these instructions; on the contrary,
they are in precise accordance with the whole current
of authorities upon this subject." (Italics supplied.)

The Commonwealth relies on Waters v. Philadel-
phia, 208 Pa. 189 (1904). There it was held that
where an owner of land erected a building about four
feet back from the street line, and afterwards per-
mitted the public to use the strip between the building
line and the street line as a part of the pavement for
a period of 35 to 40 years, neither he nor his successors
in title could claim, after the city had made the street
line conform to the line of the building, that *as a
matter of law* he was entitled to damages for the value
of the strip. In such circumstances, the question of
dedication of the strip to public use was held to be for
the jury. The Supreme Court stated, at page 194:

"In the present case, we think the question of dedi-
cation should have been submitted to the jury. The
evidence showed a long use of the strip of ground in
question by the public, as part of the pavement.
Whether or not this was simply permissive, by the
owner, and was accompanied by a course of conduct
which would indicate a continued claim of ownership,
was for the jury to determine. Whether the owner of

the soil gave up the use of the strip to the public, without qualification, or whether he ever attempted in any way to limit the rights of the public therein, were questions of fact. The court should have given to the jury an adequate definition of what facts or circumstances would amount to a legal dedication, and it would then have been for them to find from the evidence and all the circumstances of the case, the existence of facts to fit the definition."

Since the court below had instructed the jury that there was no evidence in the case that would justify them in finding that there had been a dedication of the ground to public use and restricted the jury to the single question of the amount of damages to be awarded, the judgment in favor of plaintiffs was reversed and a new trial awarded.

The Commonwealth also cites Commonwealth v. Cole, 26 Pa. 187 (1856), which held that "the use of ground by the public as a highway for more than twenty-one years made it a public road just as effectually as though it had originally been laid out and opened by the proper authorities." However, this statement was not approved subsequently by the Supreme Court in Weiss v. Borough of South Bethlehem, supra, 136 Pa. 294, wherein it stated, at page 306:

". . . The case of Commonwealth v. Cole, 26 Pa. 187, has no application to this case. *No question of dedication arose or was considered.* The road in question had been used as a public road for more than twenty-one years, and had been kept in repair at the expense of the township for several years. The proceeding was a prosecution for breaking down a fence across the road, and it was held that the case did not come within the statute imposing a penalty for such an act. What was said in the opinion as to use of ground by the public for a highway for twenty-one years was obiter dictum and must in any event be

held to have been said with reference to the facts of that case." (Italics supplied.)

The Commonwealth raises the question whether the change of use of a part of the sidewalk into a cartway is an additional servitude upon the fee to which the fee owner would be entitled to compensation. It contends that the footway and cartway form the street as an integrated whole dedicated to the public and that the relative amount of footway and cartway can be changed. The Commonwealth cites Livingston v. Wolf, 136 Pa. 519 (1890), at page 533, for the general principle that "The city or borough may decide when and where it will open streets, what shall be their width and how much of that width shall be devoted to a carriageway, and how much to footwalks . . . The foot ways no less than the carriageways are under municipal control." Gillard v. City of Chester, 212 Pa. 338 (1905), is cited to the effect that ". . . a sidewalk is a part of the street and the duty to repair it is as obligatory . . . as . . . the carriageway . . ." McCormick v. Allegheny County, 263 Pa. 146 (1919), is cited for the proposition that "The term 'sidewalk' is used to designate the portion of a highway which has been set apart for pedestrians as distinguished from what is used by vehicles." That was a trespass action brought against the county by a person who fell on the sidewalk of a county road. The Supreme Court held that the county was liable because it had assumed entire responsibility for every part of the road, including the sidewalk.

It must be noted that in the instant case, as heretofore stated, neither the borough nor the county, nor any other governmental agency ever exercised lawful control over plaintiffs' sidewalks and grass plots which were admittedly on their land and were constructed and paid for by them, while in the Livingston, Gillard and McCormick cases *the land in question,*

*including the sidewalks*, was part of an area over which the Borough of Carlisle in Livingston, the City of Chester in Gillard, were in lawful control *by ordinance*, and the County of Allegheny *by statute* in McCormick.

Plaintiffs contend that the Commonwealth did not acquire a right of way by prescription. We believe the fact that the sidewalks were used by plaintiffs and paved at their own expense and that the grass plots and trees also were maintained by them, is persuasive evidence that use by the public was permissive rather than adverse. Even if it be assumed that the public had used the sidewalk *adversely* for more than 21 years, we think the public's right would be limited to pedestrian use. The applicable rule is stated in 17A Am. Jur. 725, Prescriptive Easements, §117, as follows:

"The extent of a prescriptive easement is fixed and determined by the user under which it was acquired. The presumption of a grant is afforded only because possession amounting to a continuous claim of title has been acquiesced in for the period necessary to give a prescriptive right. Therefore, the presumed grant can never extend further than the user in which the other party has acquiesced . . ."

28 C. J. S. 768, Easements, §89, states the rule as follows:

"The use of easement by prescription is limited both as to its character and its extent, to the use by which the right was established . . .

"Ways. The use of ways by prescription is limited to the user by which the right was created. If the way has been used for a particular purpose it cannot be subsequently used for any other . . ."

Restatement of Property, §478, Factors in Ascertaining Extent of Easements Created by Prescription:

"In ascertaining whether a particular use is permissible under an easement created by prescription a comparison must be made between such use and the use by which the easement was created with respect to

"(a) their physical character,

"(b) their purpose,

"(c) the relative burden caused by them upon the servient tenement."

Illustration 3 of this rule is in point here:

"3. For the prescription period, *by walking*, A uses adversely a path across Whiteacre. The easement thus acquired *does not justify the driving of an automobile over the same route.*" (Italics supplied.)

The reason for this rule was well expressed by Mr. Chief Justice Gibson in Bird v. Smith, 8 Watts 434, 440 (1839). In holding that a prescriptive right to operate a ferry had been gained by prescription, he said:

". . . The rule seems to be, that the grant shall not be extended beyond the purpose to be answered by it; *nor ought it in reason to be.* The presumption being that there was an actual grant, there is no room to suppose the grantee paid for, or the grantor parted with, more than was adequate to the purpose . . ." (Italics supplied.)

In the case at bar, the public has walked over plaintiffs' sidewalks for many years. We do not believe, however, it could be inferred from this that plaintiffs had granted the public the right to come on the land with bulldozers, destroy plaintiffs' trees, dig up their grass plots, sidewalks, gasoline tanks and tear down their pumps and make the whole area part of a concrete highway to be used by vehicular traffic, without first instituting condemnation proceedings and making payment of adequate compensation.

In Donahue v. Punxsutawney Borough, 298 Pa. 77 (1929), the borough claimed that Water Street, which

was 50 feet wide and ended at plaintiff's property line, extended through plaintiff's property for 79 feet. In support of this claim, it was shown that there were wagon tracks leading across plaintiff's land for this distance which apparently had been used by the public. The Supreme Court, in reversing the court below, said, page 82:

". . . A way by prescription, whether public or private, can never be wider than that used on the ground: Ryman v. Girard Boro., 73 Pa. Superior Ct. 57; Canton Boro. v. Williams, 67 Pa. Superior Ct. 239. The right acquired by user is no broader than the use: 13 R.C.L. page 34, section 23. 'If the right to the way depends solely upon user, then the width of the way and the extent of the servitude is measured by the character of the user, for the easement cannot be broader than the user': Elliott on Roads and Streets, page 136. This differs from a highway by dedication which may be of the full width dedicated although only a part is presently opened to public use: Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318; Ryman v. Girard Boro., supra. The user was never such as to exclude the owner from the land; whether there is any evidence that it was adverse we need not stop to inquire."

Ryman v. Borough of Girard, 73 Pa. Superior Ct. 57 (1919), was an action to restrain the borough from constructing a sidewalk. Plaintiff claimed that the street did not include the ground on which the sidewalk was laid out but that such ground belonged to him. The trial court refused the injunction, but on appeal its decision was reversed by the Superior Court which held that plaintiff was entitled to an injunction.

"The evidence in this case clearly established that Locust Street had been a traveled highway, over which the public authorities exercised jurisdiction since the year 1870. It was undoubtedly a public street, but the rights of the public therein were based only upon pre-

scription, arising from the long continued user adverse to the owners of the land. *The rights of the public being dependent exclusively upon adverse user*, they must be restrained to *the limits to which the use extends.* The burden was upon the borough to establish that the strip of ground upon which it was asserting the right to lay a sidewalk, and which had long been in the possession of the plaintiff, had at some time been a public street. The evidence not only failed to show that the strip of ground in dispute had ever been a part of the street, but it did conclusively establish that this land had never been used by the public . . .": Pages 59-60 (Italics supplied.)

Bruker v. Carlisle Borough, 376 Pa. 330 (1954), was a case involving a grant in 1751 from John Penn, then Proprietor of Pennsylvania, to the town of Carlisle of an area to be used as a public square. Our Supreme Court, speaking through Mr. Chief Justice Horace Stern, stated, at page 337:

". . . and it is also true that, where a dedication is for a limited or restricted use, any diversion therefrom to some purpose other than the one designated is likewise forbidden [citing cases]."

In Louisville-Nashville Railroad v. Sergent (Ky. App. 1951), 242 S. W. 2d 97, it was held, page 98:

". . . at the outset appellees are met with the insurmountable difficulty that the long continued use was only by pedestrians, and assuming a prescriptive right to a walkway existed, about which there is serious doubt, it could not be expanded into an easement for vehicular traffic . . ."

Van Sant v. City of Seattle, 47 Wn (2d) 196, 287 P. 2d 130, 132 (1955), was an action by a property owner to quiet title to land and to recover damages for destruction of lawn and shrubbery. The Supreme Court of Washington held that the location of an owner's house and yard, which was planted with grass,

shrubs and trees during the period that the public was allegedly acquiring a prescriptive easement on that land by the use of abutting platted streets, precluded the presumption of dedication of the land by the owner; that, therefore, no easement was created in the city over the disputed area and that the owner was entitled to recover for the damage done to his lawn and shrubbery. The court held:

"Public easements by prescription are generally based upon an implied dedication by the owner of the land. KRUGER v. LeBLANC, 70 Mich. 76, 37 N.W. 880 (1888); 4 TIFFANY, REAL PROPERTY (3d ed.) 598, §1211 . . . we have . . . recognized in each case that *what is reasonable depends upon the facts and circumstances of the case.*

"Where the owner has placed fences *or other obstructions* upon his property during the time the statute is running, there is indicated an intention *not* to dedicate those portions of his property to the public use . . ." (Italics suppied.)

For the foregoing reasons, we are of the opinion that the Commonwealth's motion for judgment non obstante veredicto cannot be granted. Manifestly, the evidence, all of which is undisputed, is not sufficient to justify this court in setting aside plaintiffs' verdict and entering judgment for the Commonwealth. Consequently, we made the following

### Order

And now, September 12, 1960, the Commonwealth's motion for judgment non obstante veredicto is overruled. Judgment is directed to be entered on the verdict in favor of plaintiffs, Edward T. Romberger, individually, and Edward T. Romberger and Blanche E. Romberger and against defendant, Commonwealth, for the respective amounts set forth in the verdict, together with interest thereon. Defendant shall pay the costs of this proceeding.