# Johanna Ferdinando *v.* The City of Scranton and A. B. Dunning, Street Commissioner, Appellants.

*Deed—Alley—Prescription.*

A grantor reserved in his deed for two lots an alleyway ten feet wide at the request and for the convenience of the grantees. The successive owners of the two lots continued in full actual possession and constant daily use of the alley. The use of the alley by others than the owners of the land was only permissive, occasional and varying. *Held,* that the authorities of the city in which the land was situated had no right to prevent the owners of the lots from building over the alley.

Argued Feb. 24, 1899. Appeal, No. 42, Jan. T., 1899, by defendants, from decree of C. P. Lackawanna Co., Sept. T., 1898, No. 2, on bill in equity. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an injunction.

GUNSTER, J., filed the following opinion:

### FACTS.

1. In the month of March, 1898, the plaintiff, being in possession and claiming to be the owner of a parcel of land situate on the easterly side of Fairview avenue, in the fourteenth ward of the city of Scranton, commenced the erection of a dwelling house upon said land, and has proceeded with it until said house is now well under way. The basement wall is built, the frame is up, and the second story and the studding is all in place, and she had already expended in the erection and construction of said dwelling about the sum of $1,000. The land upon which the building is being erected is described as follows: A certain lot, piece or parcel of land, situate in the fourteenth ward of the city of Scranton, described as follows: beginning at a point on the division line between lots 45 and 46, on William Merrifield's plot of lots in the borough of Hyde Park, said point being forty feet easterly from the rear line of said lots; thence running in a westerly direction along said division line and an extension of the same to Fairview avenue, a distance of seventy feet more or less; thence in a northerly direction along

said Fairview avenue ninety-two feet more or less to a point where the division line between lots 44 and 45 on said plot if extended would intersect with Fairview avenue; thence in an easterly direction along an extension of the said division line between lots 43 and 44 about seventy-two feet to a point, being forty feet easterly from the rear line of lot No. 44; thence in a southerly direction across said lots Nos. 44 and 45, ninety-two feet more or less to the place of beginning. Being the rear of forty feet of said lots Nos. 44 and 45, and all the land in the rear of said lots lying between said lots Nos. 44 and 45 and Fairview avenue as the same is laid out on Merrifield's plot of lots in the borough of Hyde Park.

2. On June 20, 1898, A. B. Dunning, street commissioner of the city of Scranton, one of the defendants, together with the chief of police of said city and a large force of men, claiming that there was a public court, alley or street called Nealis court, running from Ninth street or Wyoming avenue to Fairview avenue straight across lot 45, and that said building was an obstruction to said alley, went to the said premises and threatened to tear down said building.

3. When the street commissioner threatened to remove the building, the present bill was filed, and an injunction as prayed for was issued. Soon thereafter a counter bill was filed on behalf of the city. The city alleges that where the plaintiff is erecting her building there is a public alley, known as a part of Nealis court; that Nealis court is one of the public courts, alleys or streets in the fourteenth ward of the city of Scranton, and is a thoroughfare extending from Fairview avenue to Ninth street, and from Ninth street to the Delaware, Lackawanna and Western Railroad Company's tracks; that between Fairview avenue and Ninth street said Nealis court is about ten feet in width and is extensively used by foot travelers in going from that section of the city called Hyde Park to the central part of the city, and returning; and that it is also used very extensively by the employees of the Delaware, Lackawanna and Western Railroad Company in going to and from their work. It is claimed on the part of the city that said alley became a public highway either by dedication or by prescription and the disposition of the case admittedly depends upon the question whether such an alley exists, and if it does, whether it be a public alley or not,

4. It appears from the evidence that in 1851 the late Judge Merrifield, who was then the owner of a tract of land in what was then and is still known as Hyde Park, and including the place now in dispute, laid out some streets and plotted lots thereon. Among the streets so laid out by him were Chestnut street and Wyoming avenue, and buil ling lots were laid out on each of the said streets and a plot or map of the streets and lots laid out, and plottings were prepared by his son Hon. Edward Merrifield. On the easterly side of Chestnut street and on top of a hill were plotted lots 26 to 35 inclusive; these were neither of uniform width and depth. On the westerly side of Wyoming avenue and on the easterly face of said hill were plotted lots 36 to 45 inclusive; these were plotted of a uniform width of forty-six feet and the uniform depth of 150 feet. Between the rear of the lots plotted on Chestnut street and the rear of the lots plotted on Wyoming avenue was left an irregular shaped strip of land constituting to some extent a bluff or brow of a hill. On this bluff was an opening to a coal mine and for sometime Mr. Merrifield used the land as a means of access to the coal opening. In February, 1879, the city of Scranton, by virtue of its corporate powers, laid out and opened Fairview avenue longitudinally over this strip of land to the width of eighteen feet. The opening of Fairview avenue left a strip of land between the easterly side of the said avenue and the westerly or rear end of lots 44 and 45, of the depth of about thirty feet. Fairview avenue is about twenty feet higher than the rear end of said lot.

3. When the lots were plotted no alley was laid out or plotted on either lots 44 or 45 which adjoin each other and front on Wyoming avenue, nor was any alley laid out or plotted on the strip of land or bluff of the hill in the rear of said lots. When Judge Merrifield sold these lots the description thereof in the contracts was written to correspond with the map or plot which had been prepared by his son. Lot 44 was sold to James White, and lot 45 was sold to James Fox, and when the deeds or formal conveyances were made Judge Merrifield, at the request and for the convenience of the parties mentioned, described the land conveyed to James Fox as follows, to wit: " All the right of soil to a certain village lot No. 45, in said Merrifield's village plot in the late borough of Hyde Park, now Fourth ward of

the city of Scranton, bounded, situate and described as follows, to wit: Situate on the west side of Wyoming avenue and immediately adjoining the old graveyard, commencing at a corner on said avenue, and running back at the date of survey, north 52 degrees west 150 feet; thence north 38 degrees east to a foot alley of ten feet wide, hereby reserved out of said lot for the purpose aforesaid; thence along the said alley south 52 degrees east 150 feet to the line of Wyoming avenue; thence along the line of said avenue to the place of beginning. Hereby reserving all the coal and minerals lying and being underneath the same, together with the right to mine and remove the same and without being subject to any damages on account thereof; provided no opening shall be made from the surface." And the land conveyed to James White was described as follows: " All that certain tract or parcel of land situate in Hyde Park in the Fourth ward of the city of Scranton, county and state aforesaid, bounded and described as follows, to wit: It being lot No. 44 of the said William Merrifield's village plot, situated on the west side of Wyoming avenue, commencing at a corner of lot No. 43 now conveyed by articles of agreement to Thomas Graham; thence along the line of said lot, north 52 degrees west 150 feet to the rear line of said lot; thence south 38 degrees west 46 feet to a corner; thence south along the line of an alley 52 degrees east 150 feet to a corner on said Wyoming avenue; thence along the line of said street north 38 degrees east 46 feet to the place of beginning. Hereby excepting and reserving all the coal and minerals lying and being underneath said lot, together with the right to mine and remove the same without making any opening on the surface of said lot. The party of the second part hereunto agreeing to waive all claims to damages arising from the mining of coal and minerals, and removing the same from under said lot; also further agreeing to make a substantial post and board fence and keep the same in good repair as against adjoining land of the said Merrifield." And in the several conveyances in the plaintiff's chain of title to the rear portion of lots 44 and 45 respectively, an alley is called for in similar language.

6. By divers conveyances the plaintiff became the owner of the rear portion of lots 44 and 45, and in 1898 purchased from the estate of Judge Merrifield all the land between the rear of

lots 44 and 45 and Fairview avenue, and extending the width of said lot.

7. Soon after the construction of the Delaware, Lackawanna and Western Railroad Company's bridge over the Lackawanna river, in the early '50s, and about the same time Judge Merrifield laid out his lots, many persons desiring to go from what was then known as the village of Scranton to Hyde Park or to come from Hyde Park to Scranton, used the bridge as a means of crossing the river; and from a point on the easterly side of Wyoming avenue nearly opposite to where the alley now in question is said to be, a well-defined footpath was worn for some distance towards the bridge. This land did not belong to Judge Merrifield. The locality of the path now known as Nealis court, as it approaches Wyoming avenue from the east, probably became fixed by the erection of a foot bridge over the Bloomsburg Branch of the D., L. & W. Railroad Company near there. West of Wyoming avenue the lots laid out on the hillside remained for many years an open field, and persons climbing up and going down the hill took what ever direction they thought easiest to the destination, and from time to time paths were worn in different places and ran in different directions, but none of these appear to have been used continuously for more than a few years, and except as will be presently mentioned, all these paths, instead of running straight up the hill from Wyoming avenue to Fairview avenue over the alley on lot 45, ran diagonally across one or more of the lots laid out on Wyoming avenue and diagonally and not longitudinally across said lot or alley. A small cemetery adjoining lot 45 on the south had been inclosed, and the path in that vicinity ran diagonally up the hill in the rear of the fence. In the course of time the fence decayed and became broken down and the path shifted to the east and across the cemetery. Gradually, however, and from time to time, buildings and fences were erected, not only on lots 44 and 45, but upon other lots and lands in the immediate vicinity, obstructing the different paths which had been used until sometime in 1888 or 1889, when all the paths were closed and there was no way going from Wyoming avenue to Fairview avenue in that immediate vicinity except over the alley on lot 45. But from the rear or west end of lot 45 to Fairview avenue there had never been a straight path or alley; and Fair-

view avenue was not opened until 1879. Prior to 1888 there was no continuous use by the public of the alley on lot 45, while the evidence shows that it was sometimes used by parties; it also shows that such use was only occasional and varying, and that successive owners of the lot have been in full, actual possession and constant daily use for their own purpose of the whole of said lot including the alley. As already said the elevation of Fairview avenue above the rear of lot 45 is about twenty feet, the hill being very steep and consisting in part of a bluff, and it was not convenient to go up or down without stairs. When all the paths which had been used from time to time became obstructed, a number of parties living in the vicinity and who had found the different paths a convenience, undertook, in 1888 or 1889, to construct a step, and did construct a step from Fairview avenue down the declivity nearly in line with lot 45, and from that time until the plaintiff began her present building operations the public used the stairs so erected and the alley on lot 45 as a footway. It appears that Mr. Kellow, one of the parties who interested himself in the construction of the stairs, was a member of the councils at that time, and that the city paid for the lumber used, but of this fact the owner of the land had no knowledge.

8. The building now being erected is an obstruction to the footway up and down said stairs and if permitted to remain will effectually blockade the same.

### CONCLUSIONS OF LAW.

As has already been said the disposition to be made of the case depends upon whether a public footway exists at the place in controversy. The defendants contend that the public has acquired such a footway either by dedication or prescription.

1. Was such a footway dedicated? The only facts relied on for a dedication are the description of and call for an alley in the several conveyance made from time to time of lots and parts of lots 44 and 45, and the use made of said alley by the public. The alley located on lot 45 is obviously not located on any part of the land between the rear of said lot and Fairview avenue. It is to be further observed that the alley mentioned in the deed from Judge Merrifield to James Fox is not described in any of the conveyances as a public alley or footway; and

that it was reserved by Judge Merrifield at the request and for the convenience of the purchasers of lots 44 and 45; and that the successive owners of lot 45 have been in full, actual possession and constant daily use, for their own purposes, of the whole of said lot, including the ten feet reserved for the footway; and that the use of said alley by others than the owner of the land has been only permissive, occasional and varying. As was said in Griffin's Appeal, 109 Pa. 150, "If there was no dedication to public use the fact of such use jointly with the owner by his mere sufferance would not establish a right by dedication no matter how long it was continued. Dedication is a matter of intention, and when clearly proved is as complete in one day as in twenty-one years. Where there is no opposing proof, long continued use by the public is evidence of an intent to dedicate, but it is by no means conclusive, and always yields to contrary proof of a satisfactory character. In Goddard's Law on Easements, p. 182, it is said, 'The intention to dedicate, however, ought to be clearly manifest in order to deprive a land owner of his own property.' (Citing numerous authorities.) In the case of Gowen v. Phila. Exchange Co., 5 W. & S. 141, we held that a space left open in private property bordering on a highway, for an accommodation, not of the public but of the owner, is not thereby dedicated to public use but may be resumed at pleasure. In Neill v. Gallagher, 31 Leg. Int. 388, we held that the mere setting back of a building from the line of the street is not a dedication of the intervening space for public use."

After a careful examination of the several conveyances and other evidence bearing on the question I fail to find any intention on the part of the owners of the land to dedicate the alley mentioned in the deed from Judge Merrifield to Fox to public use. As to the land between the rear of lot 45 and Fairview avenue, no alley was ever reserved for any purpose thereon, and no footway was used where a public alley is now claimed, prior to the erection of the steps in 1888 or 1889. Under all the facts of the case I find that no alley or footway was ever dedicated to public use at the place claimed by the defendants.

2. Has the public acquired a footway where now claimed by prescription? I do not consider it necessary to restate the facts bearing upon this branch of the case. So far as lots 44 and 45

and the land between them and Fairview avenue are concerned, all the evidence shows that whatever use was made thereof prior to 1888 or 1889, was a rambling use, sometimes by one path and sometimes by another. "A highway arises by pre-scription when there has been an adverse use of that easement continued for the period fixed by law. Anciently this could only be by immemorial use. The statute of 21 James I., chap. 16, fixes twenty years as the period within which actions could be instituted for the recovery of lands, and the courts following the analogy of the statute hold a use of twenty years as suffi-cient proof of a grant of an easement. The necessary length of time is still twenty years in many states, but it varies over the Union, and in Pennsylvania it is twenty-one years:" 9 Am. & Eng. Ency. of Law, 366. "The use which will establish such a right must be definite, uniform, adverse and under claim of right, and must have continued for twenty-one years. A ram-bling use, sometimes by one path and sometimes by another will not suffice:" Arnold v. Cornman, 50 Pa. 361. Nor will a use by the permission of the owner, Root v. Commonwealth, 98 Pa. 176, unless, as said by TRUNKEY, J., in the latter case, under such circumstances of acquiescence as clearly indicate the own-er's design to surrender control, and donate the way to the ex-clusive use of the public.

I am of the opinion that under the facts of the case the public, at the time the plaintiff began the erection of her build-ing and filed her bill, had not acquired the right to use the foot-way in question as a public highway by prescription.

The court decreed:

"That the defendants and every of them, their agents and servants, be perpetually enjoined and prohibited from touching, tearing down or in any way interfering with the building of the said plaintiff located upon the lot described in the plaintiff's bill; and that the city of Scranton pay the cost of these pro-ceedings."

*Error assigned* was the decree of the court.

*M. A. McGinley,* city solicitor, with him *George L. Peck,* for appellants.—Where the common-law dedication is an express one, and there is a writing evidencing it, the extent of the dedi-

cation will be measured by the writing, except where the use controls, and where it has been of such a character and so long continued as to change the extent of the easement: Elliott on Roads and Streets, pp. 90, 91; Getchell v. Benedict, 57 Iowa, 121; Bell v. City of Burlington, 68 Iowa, 296; In re Story Street, 11 Phila. 456; Scranton City v. Thomas, 141 Pa. 1; Trutt v. Spotts, 87 Pa. 339; Transue v. Sell, 105 Pa. 604; In re Pearl Street, 111 Pa. 565; In re Twenty-ninth Street, 1 Hill (N. Y.), 189; Boro. of Easton v. Rinek, 116 Pa. 1; Trickett on Road Law, 607; Ferguson's App., 117 Pa. 426; 2 Dillon on Municipal Corporations, sec. 640; 2 Greenleaf on Evidence, sec. 662; Hill v. City, 4 Law Times (N. S.), 105; Angell on Highways, sec. 139; Gowen v. Phila. Exchange Co., 5 W. & S. 141; Poole v. Huskinson, 11 M. & W. 827.

It is not true that the intent must always in fact exist in mind of the owner. To hold thus strictly would be to adopt a more rigorous rule than is elsewhere recognized in civil and criminal jurisprudence. An intent on the part of the owner to dedicate is absolutely essential. . . . But such intent will be presumed against the owner where it appears that the easement in the street has been used and enjoyed by the public for a period corresponding with the statutory limitation of real actions. . . . Where the question is as to an intent on the part of the owner to dedicate, user by the public for a period less than that limiting real actions is important as evidence of such intention, and as one of the facts from which it may be inferred. Where the animus dedicandi is established, no particular time is necessary for evidence of dedication: Elliott on Roads and Streets, pp. 92, 93; 2 Dillon on Municipal Corporations, sec. 636.

There was always the well-defined path straight up the hill over the steps, which was the main path, and was always considered as such, and the fact that some used other paths which existed for a few years and then changed as the place became built up, does not change our rights in the main path: Howard v. State, 47 Ark. 431; Gentleman v. Soule, 32 Ill. 271; Kelsey v. Furman, 36 Iowa, 614; State v. McGee, 40 Iowa, 595; Elliott on Roads and Streets, 127; Angell on Highways, sec. 142; 2 Dillon on Municipal Corporations, sec. 638.

The use of ground as a highway for more than twenty-one years makes it a public road as effectively as if originally laid out by authority: Com. v. Cole, 26 Pa. 187.

User by the public for a certain period of a way establishes it as a public way without the animus dedicandi, that is to say, a user of the public for twenty-one years shown to have been without a claim of right, exclusive of any proprietary right of the former owner and uninterrupted: Trickett on Road Law, p. 610; Com. v. Switzer, 134 Pa. 383; Schenley v. Com., 36 Pa. 59.

*Everett Warren*, of *Willard, Warren & Knapp*, for appellee, cited Weiss v. South Bethlehem Borough, 136 Pa. 294; Gowen v. Philadelphia Exchange Co., 5 W. & S. 141; Com. v. P. & R. R. R. Co., 135 Pa. 256; Neill v. Gallagher, 10 Phila. 172; In re Bellefield Ave., 2 Pa. Superior Ct. 148.

PER CURIAM, March 13, 1899:

This case was carefully and accurately tried; and, upon the facts correctly found by the learned trial judge he was clearly right in drawing the conclusions of which the decree is predicated. He was fully warranted in holding that no public alley or footway existed at the point in question, either by grant, dedication or prescription. The alley mentioned in Judge Merrifield's deed to James Fox is not described in any of the conveyances as a public alley or footway. It was reserved by said grantor at the request and for the convenience of the purchasers of lots 44 and 45, and the successive owners of lot 45 have been in full, actual possession and constant daily use, for their own purposes, of the whole of said lot, including the ten feet reserved for the footway; and the use of said alley, by others than the owners of the land, has only been permissive, occasional and varying.

It is not our purpose, nor is it at all necessary, to consider in detail the numerous specifications of error. We have found nothing in the record that would justify us in sustaining either of them.

Decree affirmed and appeal dismissed at appellants' costs.