# Kyper, Appellant, *v.* Sheaffer.

*Trespass—Right of way—Evidence.*

1. In an action of trespass for an alleged unauthorized use of a lane over plaintiff's land a question asked a witness as to whether a prior owner left the land for the benefit of the owners of neighboring lands and the public, and an answer by the witness that that was what he understood, and that the lane was an evidence of it, is wholly incompetent as evidence.

2. In such a case the defendants may establish their right to use the lane by showing that it had been used generally by the public without objection by the owner of the land.

*Evidence—Testimony in previous suit—Identity of subject matter— Identity of parties.*

3. Identity of subject matter in whole or in part and identity of the parties in interest must unite to render the testimony in one case admissible in another case.

*Trespass—Right of way—Evidence.*

4. On an issue in trespass to determine the right to use a lane over plaintiff's land, where a witness testifies that he had used the lane in question, the witness may be asked on cross-examination whether permission had not been obtained from the owner for passage on the lane.

5. In such a case the wife of the former owner of the land may be permitted to testify to a conversation between her husband and the deceased predecessor in title of land owned by the defendant to the effect that her husband had given permission to such predecessor in title to use the lane. Such permission may also be shown by the predecessors in title of the plaintiff.

*Easement—Right of way—Adverse use.*

6. A right to use a lane over the unenclosed woodland of another could only be acquired, apart from a conveyance, prior to the Act of April 25, 1850, P. L. 569, by a continuous uninterrupted and adverse user of the land for a period of twenty-one years. If the evidence fails to show a well marked or clearly defined road which was used during the whole of such period, no right is established.

7. To entitle the public to a right of way by prescription over unenclosed woodland, it must be affirmatively shown that substantially the same line of travel was continuously used by the public for twenty one years prior to the Act of April 25, 1850. Not only must the use of the road be clearly defined, but also the time at which the use began.

Argued Nov. 18, 1909. Appeal, No. 197, Oct. T., 1909, by plaintiffs, from judgment of C. P. Huntingdon Co., Sept. T., 1905, No. 16, on verdict for defendants in case of Harry Kyper and A. S. Welch v. W. T. Sheaffer et al. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Trespass for alleged wrongful use of a lane. Before WOODS, P. J.

The facts appear by the opinion of the Superior Court.

Verdict and judgment for defendants. Plaintiffs appealed.

*Errors assigned* were (1–25) various rulings on evidence and instructions fully stated in the opinion of the Superior Court.

. *Hayes H. Waite,* with him *Richard W. Williamson,* for appellants.

*J. S. Woods* and *W. M. Henderson,* with them *W. H. Woods,* for appellees.

OPINION BY BEAVER, J., March 3, 1910:

The action, the trial and result of which we are here called upon to review, was one of trespass, in which the plaintiffs charged the defendants with passing in and over an inclosed lane and open roadway to reach certain mountain timber land, lying to the east of the farm of one of them. The defendant Sheaffer, who was the owner of the timber land, employed the other defendants to haul bark, lumber, etc., from his land. His claim was that he had a right to pass through and over the lane and land of the plaintiff Welch, the owner of the farm, by reason of a prescriptive right based upon continuous and adverse use or a grant to his predecessors in title of the lane and passageway in question, in order to reach his timber land, and take therefrom what had been growing thereon. This was denied by the plaintiff Welch who brought suit to recover damages for the trespass committed upon his lands.

We had one phase of the case before us in Welch v. Sheaffer, 29 Pa. Superior Ct. 619. An action of trespass of Sheaffer v. Welch & Kyper was tried in the court below, and this is a second action of trespass with the principal parties reversed.

The first assignment of error complains of the admission of the following testimony: "Q. Mr. Spanogle, will you state whether or not your father left this road or lane leading to the mountain for the benefit of the owners of the lands on the mountain and the public. By Mr. Waite: I object to the question as leading and utterly incompetent, irrelevant and immaterial to affect the rights of the plaintiffs. The plaintiffs' rights are to be determined by the deed which Andrew Spanogle made to his sons, and not by any declaration which he

might have made affecting these rights. 2. It is an attempt to contradict the plain terms of the deed and is, therefore, incompetent." The objection was overruled. "By Mr. Henderson: Q. Now, Mr. Spanogle, will you answer the question. [Question read by stenographer.] A. That is what I understood, and the lane, I think it is an evidence of it now." Both the appellants and appellees argued this assignment of error as if it related to a declaration of Andrew Spanogle, Sr., but there is nothing in the offer to indicate that such is the case, nor is there anything in the answer of the witness to show that his father had made any declaration in regard to the use of the lane. The offer does not indicate in what manner the father left the road or lane leading to the mountain for the benefit of the owners of the lands on the mountain and the public, nor does the witness say that his father had said anything or had done anything in regard thereto. He simply said: "That is what I understood, and the lane, I think it is an evidence of it now." He apparently, therefore, relied upon the evidence contained or manifested in the existence of the lane. We think the question was incompetent and the answer irrelevant and immaterial. What was in the mind of the father of the witness was to be manifested either by his declarations or his acts. It was not proposed to prove either. The witness, if he told anything, should have communicated what his father said or did, not what were his mental processes and particularly not what was the then present value of the existence of the lane as the evidence of what his father had intended to do. The plaintiffs did not ask to have the testimony stricken out, as they might well have done. The answer of the witness was not responsive to the question, and neither question nor answer was competent. The assignment is sustained.

Albert Rohrer, a witness for the defendants, being upon the stand, who had been a tenant on the Walker farm adjoining that of the plaintiff Welch at one time, was asked in his examination in chief: "Q. Did you ever see parties driving up and down this lane or road? A. Yes, sir; this lane that is in dispute. Q. Did you see them traveling up and down that road when you were living on the Walker farm? A. Yes, sir."

On cross-examination: Q. "Who did you say went up the lane? A. Ephraim Myers and son went up the lane. Q. With a wagon? A. Yes, sir. Q. How many times? A. I would not be able to answer that question. . . . Q. What were they doing on the mountain? A. Hauling their wood down. Q. Where did they live? A. On the Abraham Lutz farm. Q. You did not notify any of the Kyper heirs of their going up and down, did you?". This question was objected to as not cross-examination, and immaterial. The court ruled it out, on the ground that it was not cross-examination. We think it was legitimate cross-examination. The defendants were endeavoring to establish their right to use this lane, because it had been used generally by the public. Surely it was proper for the plaintiffs to show that the parties whom the witness saw using it did so by the permission of the owners or that no objection was made to their use of it, because they had no knowledge of such use. The second assignment is sustained.

The third and fourth assignments of error relate to the testimony of Mrs. Katherine McKeehan, a witness in the case of Sheaffer v. Welch et al., previously tried in the same court, the witness being dead. The testimony was admitted and the motion subsequently made to strike it out was refused. We think the notes of testimony were not competent evidence. The general rule is that, "Identity of subject-matter, in whole or in part, and identity of the parties in interest must unite to render a deposition in one case admissible in another:" Fearn v. Ferry Co., 143 Pa. 122. The suit in which Mrs. McKeehan's testimony was taken was one of Sheaffer v. Welch & Kyper. This is the suit of Kyper & Welch v. Sheaffer, Shue & King. Assuming that there is identity of subject-matter—at least in part—there is not the identity of parties in interest which would make the testimony in the previous case competent here. See also N. Y. & O. Land Co. v. Weidner et ux., 169 Pa. 359; Walker v. City of Phila., 195 Pa. 168; Roberts v. Powell, 210 Pa. 594. The fact that Shue and King were merely the employees of Sheaffer in the commission of the alleged trespass does not bring them within the rule of Haupt v. Henninger, 37 Pa. 138, cited by the appellees, in which it is held that:

"In Pennsylvania, under the act of 24th of March, 1814, depositions are admissible in a subsequent cause pending between the same parties or their privies only where the same matter is in dispute." The parties defendant are entirely different from the party plaintiff in the previous suit, and if a judgment had been recovered in the present case Shue and King would have been equally liable with Sheaffer. We are of the opinion that the depositions should have been excluded or the testimony stricken out after it was admitted. These assignments of error are, therefore, sustained. The court below refused to strike out this testimony and its refusal was probably justified, so far as the ground upon which the plaintiffs objected was concerned, namely, that it was hearsay testimony. We do not think this clearly appears by the testimony itself, but if it was inadmissible, it should have been stricken out for that reason, and, holding as we do that the testimony was not admissible, we think it should have been stricken out for that reason, upon the motion of the plaintiffs.

C. H. Morrow, a witness for the defendants, being upon the stand, testified in his examination in chief, that he had passed over the lane and road in dispute to the mountain, hauling bark for Mr. Cogley, being asked upon cross-examination: "Q. Did you get permission to go up that lane?" he answered, "I did not." He was then asked, "Who did?" which question was objected to as not a proper cross-examination. The purpose of the question was then stated: "I propose to ask the witness whether or not permission was not obtained for his passage up the lane the time that he went up." This, for the reason stated in the first assignment of error, was, we think, proper to rebut the presumption that would arise from the use of the lane as a right, as testified in the examination in chief. If permission was obtained, either by others or by himself, it would, of course, rebut the presumption of the use thereof as a matter of right and was, we think, proper cross-examination. Having testified that he did not get permission, it was proper also we think to interrogate him as to whether or not he had not obtained permission from Kyper, in order, as was stated by the plaintiffs' attorney, that ground for contradiction

might be laid. This surely was proper. For these reasons, we think the questions should have been allowed upon cross-examination. The fifth and sixth assignments are, therefore, sustained.

The eighth assignment of error complains of the refusal to admit the testimony of Mary A. Kyper, the widow of Michael Kyper, who was the owner of the farm now owned by A. S. Welch at the time of his death, and whose widow and heirs subsequently conveyed the farm to A. S. Welch, one of the appellants. It was proposed to prove by her that during the time she resided on this farm, as the wife of Michael Kyper, she heard a conversation between her husband and Abraham Lutz, who was the predecessor in title to the timber tract now owned by Dr. Sheaffer, and that Abraham Lutz obtained permission to use this lane. The objection was made "That Abraham Lutz, under whom the defendants claim, is dead and his rights have passed to Dr. Sheaffer, who is a party to this record; that any conversation or statement made by Abraham Lutz to Michael Kyper could not be testified to by Michael Kyper, if he were living, and they cannot be testified to by his wife." This objection was sustained. We think the testimony was competent and that the offer should have been admitted. If the defendant Sheaffer had asked permission of Kyper to make use of the lane, we cannot see upon what principle either Kyper, if living, or his wife, when he was dead, could be denied the right to testify in regard thereto. Why, therefore, if Sheaffer's predecessors in title had asked the permission which was granted, should it not be competent and relevant testimony? The witness, so far as appears by the evidence, was entirely disinterested. Her husband had not been in any way privy to the conveyance to Lutz and, therefore, he had no possible connection with the conveyance from Lutz to Sheaffer, and the claim of the latter to the right of way depended upon adverse user and not upon a conveyance or direct grant. The witness did not come within any of the exceptions of the act of May 23, 1887, P. L. 158. The appellees assume that Michael Kyper, if living, would not have been a competent witness as to the fact proposed to be proved by his

wife. We fail, however, to see upon what ground he would have been excluded. There is no allegation, so far as we can gather from the testimony, that Kyper had conveyed the right to use this lane to Lutz. It would have been, therefore, entirely competent for him to testify that he had permitted Lutz to use the lane upon request. We fail to see, therefore, upon what ground the wife was not a competent witness to testify as to her knowledge of a verbal permission given by her husband in his lifetime to Abraham Lutz, the predecessor of Sheaffer in title, to use the lane in controversy. This is an action of trespass for damages occasioned by the use of the lane by the defendants. In this the witness had no direct interest, even if, as alleged by the appellees, she had a dower interest in the farm—and that she had such an interest is a mere inference; but, admitting that she had, it does not disqualify her. As we said in Strause v. Braunreuter, 4 Pa. Superior Ct. 263: "No interest or policy of law now makes any person an incompetent witness in any civil case or proceeding, unless he is shown to come within one of the specified exceptions, and the only exceptions we are here called upon to consider are those contained in clauses (c) and (e) of sec. 5 of the Act of May 23, 1887, P. L. 158. By clause (e) the disqualification is made to depend not only on the fact of the witness being a surviving or remaining party, to the thing or contract in action, but also on the fact of his having an interest adverse to the right of the deceased party which right has passed by his own act or the act of the law to a party on the record who represents his interest in the subject in controversy. . . . Nor was she an incompetent witness under clause (c). What she proposed to testify to was in no sense a confidential communication, and the common-law rule which prevents the husband or wife from divulging in testimony such communications after the death of the other does not apply." We think the testimony was competent and should have been received. The eighth assignment is also sustained.

The ninth, tenth, eleventh and twelfth assignments of error all raise practically the same question: Were the plaintiff Welch, the owner of the land upon which the alleged trespass

was committed, and his coplaintiff Harry Kyper and his brother Charles Kyper competent witnesses for the purpose of showing that Lutz, the predecessor in title of the defendant Sheaffer, and other persons who used the lane in controversy, had obtained permission from Michael Kyper, the predecessor in title of Welch, to make use of the lane, when he desired to do so, and was like permission given by Michael Kyper and Welch to other persons who desired to use it? The offer and the objections thereto are as follows: Mr. Waite: "We propose to prove by the witness on the stand, who is a son of Michael Kyper, and also by Harry Kyper, that during the time they were home with their father, Abraham Lutz always asked permission of Michael Kyper to use the lane when he wanted to go up to the mountain land to haul down either bark, ties or other material; this for the purpose of showing that any use which Abraham Lutz may have made of that land was by permission only and not adverse under claim of right. By Mr. J. S. Woods: It is objected, that Dr. Sheaffer, holding title as a successor in title to Abraham Lutz, and the said Abraham Lutz being now dead, any rights he has, passed to Dr. Sheaffer, who is a party to the record. This witness and the other witness being grantors of the adverse title, are incompetent to testify to anything that occurred during the lifetime of Abraham Lutz or to any conversation held between Abraham Lutz and their father, Michael Kyper, under whom they claimed title and conveyed to Allen S. Welch, party hereto." We are at a loss to see how any of these parties come within the exception of clause (e) in sec. 5 of the Act of May 23, 1887, P. L. 158. The defendant Sheaffer holds nothing whatever by contract under any of them. The title to his land was acquired from Abraham Lutz. He claims the right to reach it over the way which is the subject of controversy by adverse user. There is no contract relation between the Kypers and Welch, or any of them, and himself or his predecessors in title. It seems to us, therefore, that the witnesses whose testimony was offered were competent to testify to the facts contained in the several offers respectively. These assignments of error are, therefore, sustained.

The thirteenth assignment of error relates to the answer to
the plaintiffs' first point, which point and answer are as fol-
lows: "It is clear from the testimony of the witnesses on both
sides that neither Dr. Sheaffer nor his predecessors in title had
acquired any right in the lane in dispute prior to January 8,
1845, when Andrew Spanogle, the then owner of all the lands,
caused a survey to be made, and divided the property, con-
veying one farm, now owned by A. S. Welch, to his son John,
and the lane, according to the testimony on both sides, being
partly through cultivated lands and partly through timber
lands, no user of the road by Dr. Sheaffer and his predecessors
in title, no matter how frequently and continuously used since
that time, could vest in Dr. Sheaffer or his predecessors in
title the right to travel through the lane, and the verdict of the
jury must be for the plaintiffs. *Answer:* The point contains
evidence for the jury to consider and we refuse it as put." We
can recall no testimony relating to the use of this lane and the
continuance of it through uninclosed woodland which was
entitled to go to the jury. It is true that Andrew Spanogle
testified that his father moved with his family into the valley
in which the lands of the plaintiff Welch and the defendant
Sheaffer were situated in 1829, his testimony in relation
thereto being as follows: "Q. Do you remember the road
which runs up from the public road in the valley to this moun-
tain land of Lutz's? A. Yes, sir; my father opened that road.
Q. Will you state, Mr. Spanogle, whether there was or not a
road leading up to that mountain when you moved into the
valley? A. There was not any over where it is now; the old
road was up further towards the mountain. Q. What I refer
to, Mr. Spanogle, is this: Was there when you folks moved into
the valley this road leading up from the public road or from a
public road to the Abraham Lutz property on the mountain?
A. From the old public road there was. Q. The old road that
you spoke of through the valley, the old public road, was
that higher up than the present public road? A. Yes, sir; it
was further towards the mountain. Q. Was there a cemetery
in there? A. There was a graveyard there not far from the
road; three or four rods. Q. Then do I understand you, in

later years the public road leading along the valley was changed from the place where it at first had passed by this cemetery and taken further down into the valley? A. Yes, sir. Q. Will you state, Mr. Spanogle, whether or not that road, leading to the mountain, back in those years, was a well-used road, at the time you moved there? A. What? Q. Whether it was a road that was somewhat used when you folks moved there? A. Yes, sir; it was used of course like all roads are that lead up to woodland on the mountain. Q. Was Samuel Lutz the owner of this mountain tract when you folks moved there? A. Well, I cannot say whether he was when we moved there; I think that he was; I know that he was not long afterwards. Q. Now, will you state, Mr. Spanogle, while your father owned these lands, embracing the Welch and Walker farms, Samuel Lutz used this road leading from the mountain tract down to the public road? A. Yes, sir. Q. Did his son, Abraham, who owned that title to the mountain land afterwards, use that same mountain road? A. I believe so; I did not live there just at that time when he had it in his possession, but I understood—— By Mr. Waite: I ask now that the testimony of this witness be stricken out with reference to who used the road, for the reason that the witness says that he states not from his personal knowledge of persons using it, but from what he understood. I will change that. I ask that the witness's testimony as to the use made of the road by Abraham Lutz be stricken out for the reason that the witness himself admits that he derived his information from others and not from personal knowledge. By the Court: I think it is some evidence to go to the jury. Motion overruled. Bill of exceptions sealed for plaintiffs. By Mr. Henderson: Q. Then, according to your statement, Mr. Spanogle, you folks moved in some time back in the 20's? A. It was the year 1829 we moved to the valley. Q. And I understand you to say this road leading up to the mountain was there then; state whether you ever yourself hauled up and down that road? A. Yes, sir; I did myself. Q. When you were a boy? A. When I was about seventeen or eighteen years old. Q. Did other people haul up and down there? A. Yes, sir; I never heard any ob-

jection to any persons hauling up and down. . . . Q. Now this road which led from the public road up to the mountain, was it a well-marked road? A. Yes, sir. Q. And plainly marked through the woods? A. Yes, sir. Q. After your father conveyed what is now the Welch farm to your brother John, you father still owned the Walker farm? A. Yes, sir." This brings us to the testimony which was objected to and the admission of which constitutes the first assignment of error. This testimony we think lacks the definiteness which would entitle it to go to the jury. Section 21 of the Act of April 25, 1850, P. L. 569, provides: "That no right of way shall be hereafter acquired by user, where such way passes through unenclosed woodland; but on clearing such woodland, the owner or owners thereof shall be at liberty to enclose the same, as if no such way had been used through the same before such clearing or enclosure." In order to acquire a right of way by continuous and adverse user, therefore, it would have been necessary that the user should have been commenced prior to April 25, 1829. The time in 1829 when the elder Spanogle moved his family to the neighborhood, or to the premises which are involved in this dispute, does not appear, and the fact that there was the appearance of a road, of a well-marked road or a clearly defined road, at the time of his removal there does not fix the date at which the road commenced to be used, nor is it shown, nor does it clearly appear, that it was used by the immediate predecessors in title of the defendant Sheaffer. Nor does it clearly appear from the testimony of this witness or any other that there was a continuous, uninterrupted and adverse user by those, under whom the defendant, Sheaffer claims, for a period of twenty-one years prior to the passage of the act referred to. We are, therefore, at a loss to find any evidence which should carry that question to the jury, for, as said in Jones v. Crow, 32 Pa. 398, in which the easement claimed was the right to obstruct the flow of the water through his land, by a party claiming by reason of long usage, to the injury of a lower mill owner, he "must prove that such obstruction has been continued, exclusive, and with the acquiescence of the owner of the land, for twenty-one years," and

that "the proof in such case must be clear, definite and un-equivocal, both as to the time of the enjoyment, and the extent of the obstruction." So, in such a case as the one which we are considering, we think the proof should be clear, definite and unequivocal, and that the court must consider the evidence as sufficient in these respects before it is submitted to the jury. We find no such testimony in this case. On the contrary, it is lacking in the clearness which is necessary; it is hazy, obscure, indefinite and equivocal. The defendants, as we understand it, practically admit that no right of way could have been acquired, as they claim the easement, after the year 1850, and are, therefore, shut up to the claim of a right acquired prior to the passage of the act, and seem to rely in their argument upon the testimony of Spanogle as to the beginning of this right in 1829, but Spanogle's testimony lacks definiteness in that it does not fix the time as prior to April 25, 1829, nor does it relate to the use by the defendant Sheaffer or those under whom he immediately claims. It is insufficient from every point of view to determine a user which would inure to the benefit of the defendants, nor to a time which is sufficient to establish the right prior to the passage of the act referred to. The testimony as to the adverse character of the user is also lacking in clearness and definiteness. We think, therefore, the plaintiffs' first point should have been affirmed.

For the same reason, also, the second point, the answer to which is complained of in the fourteenth assignment, should have been affirmed.

So the fifteenth assignment, in which complaint is made of the answer to the plaintiffs' third point, which was: "Dr. Sheaffer, the purchaser of the title to the mountain land from the heirs of Abraham Lutz, has not shown by adequate proof that he or his predecessors in title acquired by adverse user any right to the said lane" was answered, "This is a question for the jury to determine." We can find nothing upon which the jury could predicate an adverse user for twenty-one years prior to the passage of the act of 1850, and hence there was no question upon the subject of adverse user to go to the jury. In addition to the date of the commencement of the user, prior

to the act of 1850, the character of it is also somewhat indefinite.  Taking the testimony of both the plaintiffs and defendants together, in view of the practically uncontradicted evidence as to the permission to use the lane especially, it would seem to be somewhat like the case of Ferdinando v. City of Scranton et al., 190 Pa. 321, in which it was held that the use of an alley by others than the owner of the land had only been permissive, occasional and varying and, therefore, conferred no right of a way by prescription.

The sixteenth assignment complains of the answer to the plaintiffs' fourth point, which was: "When a landowner makes a lane upon his lands for his own use, the fact that others may occasionally use the lane without his permission for any number of years will not give either to the public, or to such person or persons an adverse right to use the lane against the protest of the owner."  This was affirmed as a legal proposition, but it was accompanied by the remark: "It is for you to say whether there was a user obtained by Dr. Sheaffer or his predecessors in title."  As already intimated, we cannot assent to the proposition that there was anything in the case in regard to adverse user by Dr. Sheaffer or his predecessors in title which would have authorized the jury to find a prescriptive right to the use of the way to the woodland of the defendant Sheaffer, as claimed by him.

The seventeenth assignment relates to practically the same subject.  It is the court's answer to the fifth point, which was: "It being clearly shown by the testimony of the witnesses on both sides that this land is partly through cultivated lands and partly through woodland, no adverse right to use the same could be acquired by Dr. Sheaffer and his predecessors in title, without having shown that such adverse right had commenced twenty-one years prior to the act of April 25th, A. D. 1850, and the defendants having failed to establish this fact by proof, the verdict of the jury must be for the plaintiffs."  This was "refused as put; it is for the jury to say whether an adverse user had been acquired."  For the reasons stated in our remarks upon the thirteenth assignment of error, we think this point should have been affirmed.

The plaintiffs' sixth point was that "Under all the evidence in the case, the verdict of the jury must be for the plaintiffs." This was refused and is complained of in the eighteenth assignment of error. Taking the case in its entirety, we are compelled to reach the conclusion that this point should have been affirmed. It is very clear, as already intimated, that there was no evidence from which a jury could find that a prescriptive right had been established by adverse user prior to the act of 1850. None could be acquired since. The defendants seem to rely upon a dedication of the lane fenced by the plaintiff Welch or his predecessor in title between 1845 and 1856, but eliminating the testimony, as to the admission of which complaint is made in the first assignment of error, we do not think there was any evidence to go to the jury upon this subject. No declaration or act of the senior Spanogle was shown by which such an inference could have been made, and the manner in which the lane was shown to be closed at the public road by bars and by a fence at the other end is so manifestly contrary to such an intention—and as to these facts there is practically no contradiction—that it seems to us impossible that there should have been any intention on the part of Spanogle to dedicate it to the public. It is, of course, possible for the public to acquire an easement by prescription. As held in Brake v. Crider, 107 Pa. 210: "To entitle the public to a right of way by prescription over unenclosed woodland, it must be affirmatively shown that substantially the same line of travel was continuously used by the public for twenty-one years prior to the act of April 25th, 1850;" but the evidence of such use here by the public is as indefinite, obscure and equivocal as is the testimony in regard to the use of the defendant, Dr. Sheaffer, and his predecessors in title of the mountain tract to which he claims a right of way by adverse user by virtue of the rights acquired either by his predecessors in title or by the public. The witness, Spanogle, whose testimony is relied upon by the defendants to specify the beginning of the defendants' use of the right of way through the uninclosed woodland, is not more definite as to the route of what he calls a road, than it is as to the date of the beginning of the use. It

is, therefore, quite as impossible to base a claim of an easement acquired by the public because of his failure to define the route of the road through the woodland as to claim it for the defendant Sheaffer because of the failure to define the time at which the use began. It might be inferred from his testimony that a road had been used prior to 1829, but how and where the road ran is not definitely fixed or determined by his testimony, and the fact that Spanogle, one of the predecessors in title of the plaintiff, Welch, fenced the lane subsequently, put bars across its mouth and inclosed by a fence the other end of it, would seem to negative any idea of a dedication by the then owner to the public. The appellants argue that the proof offered by the defendants did not show a continuous adverse use of the right of way. Whilst this is true in a measure, we are not prepared to hold that, if the defendant, Sheaffer, and those under whom he claimed, did not use the road in controversy as it would have been used if he had lived on the tract of land over which he hauled his bark and timber, that the user was not, therefore, continuous. If he used it whenever necessary for the purposes of removing material from his lands, the user was in other respects such as to confer a right by prescription, but we are not prepared to say that it would not have been continuous in the sense in which the law uses that term. But it is unnecessary to pass upon this point specifically, in view of the fact that the testimony does not show such a user as was necessary under our cases prior to the act of 1850. See Hudson v. Watson, 11 Pa. Superior Ct. 266.

In affirming the defendants' first point, which is complained of in the nineteenth assignment of error, what is said in the point in regard to the marks found upon the ground being the best evidence of the location of a survey, is correct, but there is nothing said in the point, and the court did not qualify its affirmance by referring to the fact that the lane in question, which was shown by the plaintiffs' testimony to be on the Welch farm, and by that of the defendants to be on the Walker farm, had been inclosed by the owners of the Welch farm and exclusively used by them for more than half a century. The question, therefore, of exclusive and adverse possession thereof

necessarily came into the case, and the point, it seems to us, should have been qualified to that extent. Although the point is correct as an abstract legal proposition, it does not cover the whole case and the unqualified affirmance of it was misleading.

We have already referred to the twenty-first assignment of error and are of the opinion that the defendants' third point, the affirmance of which is complained of therein, should not have been affirmed, for the reason that the evidence as to the location of the road through the woodland was not such as would enable the jury to determine with definiteness that that road was used for twenty-one years prior to the passage of the act of 1850.

The twenty-second, twenty-third and twenty-fourth assignments of error, which embrace portions of the charge, are open to the same objection as the answer to the defendants' first point.

The portion of the charge complained of in the twenty-fifth assignment of error is objectionable, to the extent of its submitting to the jury the question as to whether or not Lutz, the predecessor in title of the defendant, Dr. Sheaffer, had acquired a right of way by reason of adverse user prior to 1866, subsequent to which time it was alleged that Michael Kyper, the owner of the farm claimed by Welch the plaintiff, had given permission to the owners of the woodland to travel up and down the lane in dispute and the road leading from its terminus to the woodland of the defendant, Sheaffer, because it submitted to the jury a question concerning which, as we have already said, there was not sufficient evidence.

On the whole case, as already intimated, for the numerous reasons stated, we think the court should have instructed the jury that the plaintiff was entitled to recover, leaving to the jury only the question of the amount of damages to be recovered.

We regret to send this case back for a retrial. It is time that such litigation ceased, and yet we cannot end it here for the reason that the damages claimed by the plaintiffs, even if the court upon a retrial should rule that the plaintiffs were en-

titled to recover, involve a question of fact which must be fixed by a jury.

Judgment reversed and a new venire awarded.