Peterson, Appellant, *v.* Marianna Borough.

Argued January 19, 1933.   Before FRAZER, C. J., SCHAFFER, MAXEY, DREW and LINN, JJ.

*H. Russell Stahlman,* for appellant.—A bridge alone or only a part of a tract of land may be dedicated: Grant v. Boro., 235 Pa. 536.

The continued and uninterrupted user for many years here creates a conclusive presumption that the bridge was originally dedicated: Gass v. Pittsburgh, 91 Pa. Superior Ct. 290.

The intention to dedicate was shown by acts showing assent by the owner that the bridge should be used for public purposes: Kniss v. Boro., 255 Pa. 417.

Where the use is ambiguous, the element of intention as an ingredient of legal dedication is a jury question: Albus v. Phila., 304 Pa. 280.

*Rufus S. Marriner,* of *Marriner & Wiley,* for appellee, cited: Conn v. R. R., 288 Pa. 494; Cotter v. Phila., 194 Pa. 496; Koontz v. R. R., 309 Pa. 122.

OPINION BY MR. JUSTICE MAXEY, March 20, 1933:

This is an appeal from judgment in favor of the defendant upon the whole record, entered by the court of common pleas in an action of trespass brought to recover damages for the death of plaintiff's husband. Plaintiff claims her husband's death resulted from injuries sustained in falling at 9 p. m., January 29, 1930,

through a hole in a footbridge which he says was negligently maintained by the defendant.

In 1916 the Union Coal and Coke Company acquired title to a large tract of land wholly situate in Marianna Borough. In 1924 the Union Company conveyed this tract to the Bethlehem-Cuba Iron Mines Company, which has retained title to date. The corporation conducting the mining operations on these premises was the Ellsworth Collieries Company. Both these companies are subsidiaries of the Bethlehem Steel Corporation. The tract of land was bounded on the east by Ten Mile Creek. West of the creek and running parallel to it was the Pennsylvania Railroad's right-of-way. West of this railroad was the coal mining plant consisting of shafts, two tipples, washery, power house, bath house, two batteries of coke ovens. West of this plant were borough streets and sidewalks and about 300 dwellings owned by the Bethlehem Company. On the western edge of the tract and located on a borough street was a large "company store," moving picture theatre and amusement center, known as the Arcade. This was the only place of amusement in the entire community. On the east bank of the creek were a main highway, department stores, a drug store, hotel, post office, bank, doctor's office, and other important businesses. Churches of different denominations were situated on both banks.

About 1917 the Union Company built a suspension footbridge over the creek near the point where all these business places were situated.

The community consisted of company employees, who lived on either side of the creek, and also nonemployees. Everyone in the community was at liberty to use, and did use, the bridge when crossing the creek either east or west for any purpose. When the creek was frozen over, it was possible to cross it by walking on the ice. The only other route was extremely circuitous and inconvenient and one mile long.

Persons walking through the colliery grounds had no regular pathway or walk. They proceeded through the grounds along whatever route seemed most convenient. In time several paths were worn by constant use to and from the bridge, three becoming particularly well defined.

At the time of the accident the local mine superintendent was president of the borough council and several other company officials were members thereof. On January 24, 1929, the council passed the following resolution: "Motion......that Kuntz be designated to look after the footbridge and have same repaired as needed. ...... Carried." On January 7, 1930, it passed another: "Moved,......seconded to have J. W. Shidler repair the footbridge in good condition for $350. ...... Carried."

Some time prior to January 29, 1930, several cross boards in the bridge flooring became dislodged and left an opening of disputed width. A wide plank was placed on this aperture near one railing for the use of those crossing. Just before 9 p. m., on January 29th, the deceased was seen on the highway at the east end of the bridge. Thereafter he was not seen until he was found lying injured on the ice directly under the hole in the bridge. He had sustained severe injuries to his head and body and died within a short time. His home was a company dwelling on the west bank of the creek and one of the three particularly well defined paths led directly thereto from the bridge. Whether the bridge was barricaded at the precise time of the accident was a disputed question.

After the accident J. W. Shidler did not repair the bridge pursuant to the resolution of January 7, 1930, but merely furnished the lumber therefor and was paid by the Bethlehem Company.

The first question presented for determination is: Was there a dedication of the bridge by the company to the public?

Our court in the case of Scott v. Donora Southern R. R. Co., 222 Pa. 634, 643, 72 A. 282, laid down this principle: "A dedication to the public use must rest on the intention or clear assent of the owner, and must be under such circumstances as to indicate an abandonment to the use of the community." In the case of Verona Boro. v. Allegheny Valley R. R., 152 Pa. 368, 25 A. 518, we also said: "Where the dedication of a street is sought to be established either by the recording of a plan or by the actual use of the street by the public or by such acceptance by the public as would be binding upon the owner by estoppel, the evidence must be clear." See also Shamokin v. Helt, 250 Pa. 80, 95 A. 385. In the case now before us there is no such clear evidence of dedication.

Plaintiff contends that inasmuch as the mine superintendent was also president of the council and several other officials of the mining company were members thereof, the action of the council in passing the two resolutions must have been known to, authorized by, or ratified by the board of directors of the holding company (Bethlehem Steel Corporation) and therefore there was an implied dedication of the bridge. There is no merit in this contention. A mine superintendent is not per se an officer of the corporation owning and operating the mine, but a mere agent of the corporation. Even if officers of the mining corporation were officials of the borough, their acts as borough officials would not be acts of the mining corporation. Individual officers of a corporation can bind the corporation only when they act in their official capacities as officers of such corporation and within the scope of their authority. Their acts as individuals or as officers of another corporation are not binding upon the corporation sought to be charged.

If the resolutions relied on by plaintiff had been acted on by the borough and had been coupled with such other complementary acts on the part of the company as would indicate a clear intent on the part of both borough and

company to dedicate the bridge to public use, we would have proof of the dedication and acceptance alleged by plaintiff. However, such proof is now wanting. For 12 years the company retained complete control of the bridge, repaired it, and shortly before the accident placed a plank over the opening (through which it is inferred plaintiff's husband fell), posted signs warning those wishing to cross the bridge that they did so at their own risk, and also placed a barricade at the western entrance to the bridge.

Plaintiff's second contention is that an implied dedication arises from the fact that the company for twelve years did not bar persons not employed by it from using the bridge. A permission twelve years in duration to walk on the private property of another does not establish any prescriptive right to do so or amount to a public dedication of the path walked.

Plaintiff's third contention is that to erect a footbridge from one thoroughfare to another indicates an intent to make that bridge part of a public thoroughfare. Assuming the correctness of the principle, the facts present in this case fall short of making it one to which this principle would apply. Both ends of the footbridge rested upon private property of the company and not on public highways. Even between the land of the company at the east end of the bridge and the highway, there was also another piece of land privately owned.

Appellant also argues that "if the user by the owner [of this bridge] is a public one,......and the intention to dedicate was shown by acts showing assent by the owner that the bridge should be used for public purposes, that intention is inferred because the owner suffered it to be used by the public for years." Appellant cites the case of Kniss v. Duquesne Boro., 255 Pa. 417, 100 A. 132. In that case the evidence was, as this court said, "substantially uncontradicted," that the road in question was plotted by the property owners on a plan of partition of lands, and that subsequently it was

graded by such owners and opened to public use to facilitate the sale of the property, as part of a continuous thoroughfare from the opened streets of the borough to the adjoining townships; that this highway was used by the public generally and continuously, and that after the incorporation of the borough every street commissioner had done work on the road. This court in that case quoted approvingly from Ackerman v. Williamsport, 227 Pa. 591, 594, 76 A. 421, as follows: "Where dedication is once established, it becomes simply a question of acceptance by the public; either can be established by proof of user. As against the owner of the soil, who would reassert his right in the way, an adverse user for the statutory period must be shown; but as against a municipality which disclaims all duty in connection with the way, the dedication by the owner not being in dispute, acceptance by the municipality may be shown by proof of public use for a much shorter period." In the case before us the dedication by the owner was disputed and there was not sufficient evidence of such dedication even to be submitted to the jury.

Furthermore, as Judge CUMMINS in his opinion filed aptly said: "A presumption of an implied dedication may, it is true, arise in some cases from a user; it depends, however, on the nature of the user; it must be an exclusive user; it must be such a user from which may be reasonably inferred an abandonment by the owner of dominion and control, not merely a permissive use by the public concurrently or jointly with the owner in connection with his private business." See also Ferdinando v. City of Scranton, 190 Pa. 321, 42 A. 692.

In Pittsburgh v. Edwin Bell & Sons Co., 277 Pa. 135, 144, 121 A. 101, this court quoted approvingly from the case of Weiss v. Boro. of South Bethlehem, 136 Pa. 294, 20 A. 801, as follows: "An owner may suffer a permissive use by the public for all purposes of passage, jointly with himself, without in any degree impairing his right to terminate such privilege at any time."

In the case now before us there was no sufficient evidence to submit to the jury on which there could reasonably be based a finding that the coal company, which had never laid out a specific pathway through its private grounds leading to the bridge and which had erected, maintained, and controlled a footbridge for the convenience of its own employees (thereby indirectly benefiting itself), intended to abandon that bridge and its approaches to the control and maintenance of the borough. The learned trial judge was correct in saying, where "from plaintiff's own evidence it affirmatively appears that the continued user by the owner is in connection with the operation of his own private business, which business is inconsistent with a public user, then defendant in such a case, as a matter of law, is clearly entitled to a nonsuit or to binding instructions: Gowen v. Phila. Exchange Co., 5 W. & S. 141, 142-144." In the instant case defendant was so entitled under plaintiff's own evidence.

In view of our conclusions that there was no dedication of the bridge to the community, it becomes unnecessary to discuss the other questions raised.

The judgment is affirmed.